## The Citizens Street R. W. Co. of Fort Wayne *v.* Carey, by her next Friend.

NEGLIGENCE.—*Railroad Company.*—*Acts of Employee.*—*Action for Injury.*— A child aged two and one-half years, under the care of another aged four years, was standing upon a crossing of a public street, within from three to five feet of the track of a street railroad, intersected by such crossing, being a sufficient distance away to escape harm, in its passage, from a horse car then approaching, on a down grade, at the proper time and rate of speed, and in charge of a competent and careful driver, who was also acting as conductor, in the regular employ of the company owning and operating such railroad. Such child, so standing, was seen by such driver while his car was yet sixty, and again while but twenty, feet distant from such crossing, when his attention was called to a passenger entering the car, and to other children standing upon the other side of such track. When the head of his horse was within from three to five feet of such crossing, such child was noticed by such driver to be moving toward such track, in front of the horse, and, notwithstanding the utmost endeavor of such driver to protect such child, by stopping the car, the child was trampled down and run over by the car before it could be stopped, thereby receiving injuries for which an action to recover damages was instituted against such company.

*Held,* that such facts show no negligence on the part of such driver.

*Held,* also, that it was not the duty of the driver to have stopped his car

either the first or second time he noticed the child so standing on the crossing.

*Held,* also, that it is not the duty of such company to cause its cars to be moved at a walking pace.

From the Allen Circuit Court.

*R. S. Taylor, L. M. Ninde, W. H. Coombs, W. H. H. Miller* and *R. C. Bell,* for appellant.

*A. A. Purman, J. Morris* and *W. H. Withers,* for appellee.

PERKINS, C. J.—Suit by appellee, an infant, by her next friend, M. M. Carey, against appellant, to recover damages for injury alleged to have been negligently inflicted by appellant, upon appellee, without fault on her part.

Answer: General denial.

Trial by jury, verdict for appellee for twelve hundred dollars, and judgment, over a motion for a new trial, on the verdict. With their general verdict, the jury returned answers to interrogatories put by each of the parties; on the part of the appellee, the following:

" 1.   Was the plaintiff injured by the horse and car of defendant crushing her leg?

" Answer.   Yes.

" 2.   Was she, at the time, about two and a half years old?

" Answer.   Yes.

" 3.   Did the driver of the defendant's car, which passed over her, know her, and know her at the time?

" Answer.   Yes.

" 4.   Did the said driver see the plaintiff standing about three feet from, and in dangerous proximity to, the defendant's track, when sixty feet distant from her?

" Answer.   Yes, from three to five feet.

" 5.   Could the driver have stopped the car before reaching the place where the plaintiff was standing?

" Answer.   Yes.

" 6.   Could the driver, after he first saw plaintiff, have got his horse and car so under his control as to have

avoided injuring the plaintiff, notwithstanding her conduct?

"Answer. Yes.

"7. Did the driver, after seeing the plaintiff near defendant's track, and in dangerous proximity thereto, turn round and talk with some one in the car, or make change for some one, so that he did not see her again until within twenty feet of her? did he not then turn to the other side of the platform, look in a direction different from where the plaintiff was?

"Answer. Yes, and between twenty and thirty feet.

"8. Did he see her again until the horse was upon her?

"Answer. No.

"9. Did the driver take any precaution, when he first saw plaintiff in danger, to avoid injuring?

"Answer. No.

"10. If so, what were they?

"11. Was she in dangerous proximity to the road, when first seen by the driver, and within three feet of the track?

"Answer. Yes, from three to five feet.

"We, the jury, find the above and foregoing answers to the foregoing interrogatories.

"I. RUPERT, Foreman."

And the jury also returned into court the interrogatories herein propounded by defendant, and the answers thereto, in these words, to wit:

"1. What was the age of the plaintiff, at the time the injury alleged in the complaint occurred?

"Answer. Two and a half years old.

"2. Was she at that time living with her parents, under their custody and control?

"Answer. Yes.

"3. Was her father then, and is he now, abundantly able to support and maintain said child, and pay for the nursing and medical attendance?

"Answer. Yes.

"4. Was said child, at and before said accident, in the frequent habit of going out upon the street, and across the railroad of defendant, unattended by any person except her little brother, who was only a year or two older than herself?

"Answer. No.

"5. Was said plaintiff, on the forenoon of the day of this accident, playing upon the street along which the railroad runs, unattended by any one except her said little brother?

"Answer. She was seen upon the sidewalk.

"6. Did said plaintiff receive the injury complained of at about seven or eight minutes after six o'clock in the evening of May 26th, 1873?

"Answer. Yes.

"7. Had she been for from ten to fifteen minutes prior thereto moving about or standing on said street and sidewalk, unattended by any one?

"Answer. She was, from seven to ten minutes.

"8. Was her father, at that time, away from home?

"Answer. Yes.

"9. Was her mother, at the time, at home attending to her work?

"Answer. Yes.

"10. Was the home of plaintiff situated upon the south side of Jefferson street, in Fort Wayne, and about ninety feet west of the crossing, when this accident occurred?

"Answer. Yes.

"11. Was the street car in question, at the point where said accident happened, moving on a slightly down grade?

"Answer. Yes.

"12. Was said car drawn by one horse, and said horse driven by Frederick Keanly?

"Answer. Yes.

"13. Was said Keanly standing on the front platform

of said car, and was John W. Foley standing there with him?

"Answer. Yes.

"14. Was any one else standing on said platform except the driver and Foley? if so, who?

"Answer. No.

"15. Did said driver first see said child (on said trip) when the car was from fifty to sixty feet distant, west from the crossing where the child stood?

"Answer. Yes.

"16. Was said child, at that time, standing still on the crossing on the west side of Monroe street, four or five feet south of the track of the defendant's railroad, on Jefferson street?

"Answer. She was; between three and five feet.

"17. Did said driver look and again see her standing still in the same place, when said car had approached to within from twenty to thirty feet of said crossing?

"Answer. Yes.

"18. If said child had continued to stand where she then was, would said car have cleared her by about three feet?

"Answer. If she was away from track three feet, No; if five feet, Yes.

"19. Were there four or five other small children, at that time, playing in said street, on the north side of said track, and near said car?

"Answer. Yes.

"20. Did said driver look back, on the north side of said car, to see whether such other children were attempting to get on said car, just after seeing said child standing still, the second time as above?

"Answer. Yes.

"21. Were children in the frequent habit of attempting to jump on and off said car, when moving along its route, and of standing up as near to it as they could as it passed, without being hit by it?

"Answer. Yes.

" 22. Having looked at said children on the north side, did said driver immediately again look at the plaintiff?

"Answer. Yes.

" 23. As said driver's eyes again struck the plaintiff, was she just starting to run north toward the railroad track?

"Answer. She was on or near the track.

" 24. Was said car moving, at the time, at an ordinary slow trot?

"Answer. Yes.

" 25. Did said rate of movement exceed five miles an hour? if so, at what rate was it moving?

"Answer. No.

" 26. Was it moving faster than the ordinary rate of street cars in Fort Wayne?

"Answer. No.

" 27. As soon as said driver saw said child moving, did said driver use all the means in his power to stop the car and turn the horse away from said child?

"Answer. Yes.

" 28. Did he immediately set the brake with such force as to lock the wheel of the car?

"Answer. Yes.

" 29. Did he, at the same time, turn the horse clear around, facing south-west, with such force as to throw the front truck of the car from the tracks, throw the horse on the car steps on his haunches, and bend the single-tree nearly double?

"Answer. Yes.

" 30. Was the plaintiff knocked down by the horse before he was or could be stopped?

"Answer. Yes; but could have been stopped before she was knocked down.

" 31. Did one of the front wheels of said car then pass over her foot, before the car could be stopped?

"Answer.    We can not say.

" 32.    Was said horse's head within four or five feet of the crossing when the plaintiff started to run across the track ?

"Answer.    Yes; from three to five feet.

" 33.    Was said plaintiff, when said car stopped, laying with her head on the rail in front of, and within a few inches of, one of the hind wheels of said car?

"Answer.    Was laying between the wheels, and near the hind wheel of the car.

" 34.    Was said injury the result of an accident, or intentional ?

"Answer.    It was the result of a heedless regard and indifference on the part of said driver.

" 35.    Did said driver willingly or wilfully run over said plaintiff? if so, in what did such wilfulness consist ?

"Answer.    Yes, willingly; consisting in this: a heedless regard and indifference to the safety of the plaintiff.

" 36.    Did he, when he saw she was going to get on the track, do all in his power to avoid injuring her ?

" Answer.    Yes.

" 37.    Was the driver of the street car, by which the injury to the plaintiff was inflicted, so reckless and indifferent to the safety of the plaintiff that he was willing to inflict the injury complained of ?

"Answer.    The driver of the street car, by which the injury to the plaintiff was inflicted, did willingly, through a heedless regard and indifference to the safety of the plaintiff, inflict the injury complained of.

" We, the jury, find the above and foregoing answers to the foregoing interrogatories.

"I. RUPERT, foreman."

The first question in this case to be answered by the court is: was the plaintiff injured by the defendant, through the negligence of its servant, the driver of the street car?

We will, before answering this question and in aid of

arriving at a correct answer, condense from the answers to interrogatories by the jury, and group together, the exact facts, as near as we can, touching the infliction of the injury complained of upon the plaintiff.

The injury occurred on the 26th of May, 1873, at about six o'clock in the evening, being in daylight. The horse and car of the street railroad company, by which the plaintiff was injured, were being controlled by one Keanly, in the regular and usual manner, and were running at the proper time and rate of speed. In short, the driver was acting in the regular line of his duty to his employer. The driver was a competent, steady man, and the horse and car were in proper order and condition for use. When sixty feet distant from the plaintiff, (a child thirty months old,) he saw her standing, in company with her little brother, who was not quite four years old, within from three to five feet distant from the track, where, if she continued to stand, the horse and car would, in the ordinary course of events, pass without harming her. The driver of the car saw her still standing in the same place, when within twenty or thirty feet of her. About that time, or soon after, the driver was called to give his attention to a passenger entering the car; and there were children on the other side of the car from that on which the plaintiff was standing, to whom, so far as appears, the driver owed attention equal to that due to plaintiff, and who might be exposed to danger, and to whom the driver turned his attention for a moment. When the head of the horse attached to the car was within about three or four feet of being in line with, and in front of, the plaintiff, she started to move upon the track in front of the horse, and was trampled down by it, and run over by the front wheel of the car, upon the side of it toward the side of the track upon which the plaintiff was standing. As soon as the driver was aware of her moving toward the track, he made every possible effort to stop the car.

On these facts, the question arises, do they show negligence on the part of the driver employed by the company?

It was not negligence, under the circumstances stated, for the driver to fail, if he did fail, to see the child at the moment she started to advance. We do not think a case of negligence on the part of the appellants, by the acts of their servant, the driver, is made out. The appellant owed a duty to its patrons, being the travelling public, and to those persons who might happen to be upon or crossing the railroad track, which duty the driver Keanly was to discharge. The duty to the travelling public was to make regular trips, and on time, whenever it could reasonably be done. This necessarily forbade that he should stop his car, or slacken its speed, except when there was a necessity for it. The running of the street cars, as we have said, conformably to the regulations, was a service useful to the public, and required by implied contract. In our opinion, the facts in this case do not show that a necessity appeared for stopping or slacking the speed of the car, till the plaintiff attempted to cross the track; that when that necessity did appear, the driver made what effort he could to avert the catastrophe that happened, but that the effort was unavailing, because the necessity was created by the act of the plaintiff, when it was too late to avert the unhappy consequences of that act.

In this case, the plaintiff placed herself beside the railroad track, at a distance from it where she was out of harm's way. The passage of a horse-car, at its ordinary rate of speed, was not calculated to frighten and confuse her. She stood still beside the track. There she had stood from the moment the driver first saw her, and continued to stand, till it may be said she, in effect, threw herself under his horse's feet. Nothing indicated to him that she intended to cross the track, but, on the contrary, that she was standing there for the purpose, as was the habit of children of the city, to witness the passage of the car. The facts would justify the driver in draw-

ing this conclusion. Everything indicated to him that there was no necessity for stopping the car or slacking its speed. We do not think it is the duty of a street-car driver to stop his car, or to constantly creep along at a snail's pace, for fear or in anticipation that some child may possibly throw itself under his horse, in the absence of any thing indicating the probable occurrence of such an act.

Suppose he had stopped the car when he first saw the plaintiff; what was he to do? He might then have brought his horse to a walk; was he required by the circumstances to do so, to avoid the charge of negligence? If he was in this case, then he would be bound to do so in every case where he saw children standing beside the track; and the consequence might be that this would result in such slow travelling upon the cars as to cause their abandonment by the travelling public, and bring ruin to the street railroad company. It seems to us that he was not bound to slacken his speed, it then being but ordinary, till there was a necessity for it. What necessity for it appeared in this case? The plaintiff was standing beside the track, where she was out of danger, and where it was common for children to stand as the cars passed. She evinced no disposition to enter upon the track or to approach to a dangerous proximity to it.

The presumption was that she would not. In such a case it seems to us clear, that it was not negligence in the driver to continue his usual rate of speed, till the plaintiff did commence to move upon the track. Nor do we think it was the duty of the driver, considering the diversity of objects demanding his attention, to keep his eyes continuously on the plaintiff; and, hence, as we have already said, it was not negligence in him to fail to see her, if he did so fail, at the moment she commenced to move upon the track. This decision is supported by *Young* v. *Harvey*, 16 Ind. 314, and cases cited.

Having come to the conclusion that there was no neg-

ligence on the part of the defendant, we need examine no other question.

Judgment reversed, with costs.

Petition for a rehearing overruled.