HERMANUS G. T. RACK

v.

THE CHICAGO CITY RAILWAY COMPANY.

*Opinion filed April 21, 1898—Rehearing denied June 9, 1898.*

1. APPEALS AND ERRORS—*in considering propriety of peremptory instruction the court does not weigh the evidence.* In passing upon the propriety of the giving of a peremptory instruction for the defendant, the only question for the Supreme Court is whether the evidence, if taken as true, together with all inferences which may justifiably be drawn therefrom, is so insufficient that were a verdict returned for the plaintiff the court would be obliged to set it aside.

2. NEGLIGENCE—*grip-man not required to slacken speed on seeing children standing near curb.* A grip-man is not required to slacken his usual speed on seeing children standing in the street near the curb, and if, upon seeing them start to run across the track, he stops as soon as possible the company is not chargeable with negligence, in the absence of any claim that the train was not properly supplied with brakes.

*Rack v. Chicago City Railway Co.* 69 Ill. App. 656, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

BURNHAM & BALDWIN, for appellant.

W. J. HYNES, and H. H. MARTIN, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of trespass on the case, brought by Hermanus T. G. Rack, by his next friend, in the circuit court of Cook county, to recover damages on account of personal injuries sustained, he being at the time a boy about four years and seven months old. The accident occurred on the 8th day of August, 1893, on Fifty-fifth street,—west of the crossing of Fifty-fifth street and Kimbark avenue,—in the city of Chicago. Defendant's cable trains at that point run east and west on Fifty-fifth

street.   Plaintiff and another small boy were first seen
by the grip-man of the cable train, which was approach-
ing from the east, standing in the roadway of Fifty-fifth
street, south of the east-bound cable track, two or three
feet from the curb-stone.   The grip-car at that time was
about one hundred and fifty feet away, and was running
at the rate of about ten miles an hour.  The distance from
the curb-stone to the east-bound track was estimated at
twelve feet.   When the grip-car was thirty or forty feet
away the older boy started to run north across the street,
and when he had gone about fifteen feet plaintiff also
started to run across, directly in front of the approach-
ing train.  The grip-man shouted as soon as the older boy
started and also at plaintiff when he started.   He put
on the brake and reversed the lever when the first boy
started, but could not stop in time to save the smaller
boy.  One witness testified the plaintiff reached the track,
stubbed his toe and fell when the train was about twenty
or thirty feet away; others, that he ran against the cor-
ner of the grip-car and fell, or was knocked down by it.
One of his feet was so crushed and lacerated that it be-
came necessary to amputate it at the joint, taking off all
the toes on that foot, leaving only the stump.  After strik-
ing the child the train ran the length of the grip-car and
about half the length of the next car, or about thirty-
four or thirty-five feet, before it came to a stop.

At the close of the evidence, on defendant's motion,
the court instructed the jury to find a verdict for the de-
fendant.   A motion for a new trial was made and over-
ruled, and judgment was entered upon the verdict for
costs in favor of the defendant.   The plaintiff appealed
to the Appellate Court for the First District, which af-
firmed the judgment of the circuit court, but granted to
appellant a certificate of importance, and appellant asks
a reversal of the judgment of the Appellate Court.

The only question necessary to be considered in this
case is embraced in appellant's third assignment of error,

viz., did the trial court err in granting defendant's motion by instructing the jury to find the defendant not guilty? In considering the propriety of such an instruction we have nothing to do with any question as to the preponderance of the evidence or the credibility of the witnesses, or the force to be given to the evidence having a tendency merely to impeach the veracity of the witnesses. The only question is whether any evidence was given which, if true, would have tended to support a verdict for plaintiff. *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132.

In *Simmons* v. *Chicago and Tomah Railroad Co.* 110 Ill. 340, this court used the following language (p. 346): "But we think the more reasonable rule, which has now come to be established by the better authority, is, that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury but may direct a verdict for the defendant." (*Pleasants* v. *Faut,* 22 Wall. 120; *Randall* v. *Baltimore and Ohio Railroad Co.* 109 U. S. 478; *Martin* v. *Chambers,* 84 Ill. 579.) The case of *Simmons* v. *Chicago and Tomah Railroad Co. supra,* was referred to with approval by this court in *Lake Shore and Michigan Southern Railroad Co.* v. *O'Conner,* 115 Ill. 254, and again in *Bartelott* v. *International Bank,* 119 id. 259.

The alleged cause of action set out in the declaration in the case at bar is, that the Chicago City Railway Company, by its servants, so carelessly and improperly drove and managed the grip-car and cable train, that by and through the negligence and improper conduct of the defendant, by its servants, the plaintiff was permanently injured. There was no evidence tending to show appellee was guilty of negligence. The evidence shows that the train of which George Eighme was the grip-driver, and which injured the appellant, was going west on Fifty-

fifth street; that the gong was rung for Kimbark avenue; that just as the train was crossing Kimbark avenue, and when near the center of the avenue, the grip-driver noticed a couple of small boys about three feet from the curb, on the south side of Fifty-fifth street; that when he first saw them they were both together, standing by the curb-stone, on the roadway, about twelve feet south of the south or east-bound track; that on the day of the accident the track was wet and slippery; that when the track was dry a train could be stopped in about sixty or seventy feet, but when slippery or wet it took a longer distance; that when the car was within thirty or forty feet from the boys, the older boy suddenly started to run across the track in front of the car, to the north side of the street; that when he had gone about fifteen feet, the smaller boy, the plaintiff, started to follow the first or larger boy, and he was struck by the car and injured. It further appeared, from the evidence, that when the grip-man saw the first boy start to run across in front of the car he immediately applied the brake, reversed the lever and commenced stopping as fast as he could; that he hallooed as soon as the first boy started and also when the smaller one started; that he stopped as fast as he could, but says he could not stop in time, possibly, to save the small boy; that he could not have stopped sooner than he did. There was no testimony tending to contradict the grip-man, but the testimony shows he did all that was possible to stop the train and avoid the accident. It appears, also, that the grip-car was only about forty feet from the smaller boy and his companion when the latter started, which was the first thing to indicate that he intended to cross the track. Until this boy started there appeared no necessity for stopping or slackening the speed of the train. Neither appellant nor the older boy was on the track, but they were by the curb and in no danger, but started on a sudden impulse to run across the street,—an act which could not be foreseen or

guarded against by the grip-man,—and under the evidence the car could not have been stopped in time to prevent the accident.

In *Citizens' Street Railway Co.* v. *Carey*, 56 Ind. 396, a child two and a half years old stood on the street crossing, three to five feet from the street railway track. A car drawn by one horse approached at the usual rate of speed of cars in that city. The driver saw the child when sixty feet away. When the head of his horse was from three to five feet from the crossing the driver noticed that the child was about to move toward the track, and he tried to stop the car but could not do so, and the child was run over. The jury returned a verdict for the plaintiff. On appeal the Supreme Court held the judgment must be set aside because there was no evidence of the driver's negligence. The reasoning of the court in that case seems so applicable to the case under consideration that we give a portion of the opinion. The court said: "The duty to the traveling public was to make regular trips, and on time, whenever it could reasonably be done. This necessarily forbade that he should stop his car or slacken its speed except when there was a necessity for it. The running of the street cars, as we have said, conformably to the regulations, was a service useful to the public and required by implied contract. In our opinion the facts in this case do not show that a necessity appeared for stopping or slacking the speed of the car till the plaintiff attempted to cross the track; that when that necessity did appear the driver made what effort he could to avert the catastrophe that happened, but that the effort was unavailing, because the necessity was created by the act of the plaintiff when it was too late to avert the unhappy consequences of that act. * * * She stood still beside the track. There she had stood from the moment the driver first saw her, and continued to stand till, it may be said, she in effect threw herself under his horses' feet. Nothing indicated to him that she

intended to cross the track, but that she was standing there for the purpose, as was the habit of children of the city, to witness the passage of the car. The facts would justify the driver in drawing this conclusion. Everything indicated to him that there was no necessity for stopping the car or slacking its speed. We do not think it is the duty of a street car driver to stop his car, or to constantly creep along at a snail's pace, for fear or in anticipation that some child may possibly throw itself under his horse, in the absence of anything indicating the probable occurrence of such an act. * * * It seems to us that he was not bound to slacken his speed, it then being but ordinary, till there was a necessity for it. What necessity for it appeared in this case? The plaintiff was standing beside the track, where she was out of danger and where it was common for children to stand as the cars passed. She evinced no disposition to enter upon the track or to approach to a dangerous proximity to it. The presumption was that she would not. In such a case, it seems to us clear that it was not negligence in the driver to continue his usual rate of speed till the plaintiff did commence to move upon the track." The following authorities are of similar import: *Flanagan* v. *People's Passenger Railway Co.* 163 Pa. St. 102; *Fleishman* v. *Railroad Co.* 174 id. 510; *Chilton* v. *Central Traction Co.* 152 id. 425; *Trumbo* v. *City Car Co.* 89 Va. 780.

Appellant contends that the mere fact that the speed of trains is limited to a certain rate cannot furnish an excuse for running at that rate under all circumstances. The proof shows that the cable runs at the rate of twelve miles an hour; that the grip-man had commenced slowing up, and was running at the rate of about ten miles an hour. There is no testimony showing that the train was running at a rate of speed that was dangerous or that was prohibited by the ordinances of the city of Chicago. Neither is there any evidence to show but that the

train was properly supplied with brakes, and there is no allegation in the declaration of negligence in that regard.

There being no evidence tending to show that appellee was guilty of negligence, and the evidence being insufficient to support a verdict for the plaintiff, the trial court properly instructed the jury to find a verdict for the defendant.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*