## John A. Barnes et al. v. Western Wheel Works.

1. PRACTICE—*When It Is Error to Take a Case from the Jury.*—In cases where there is a question which should be submitted to the jury it is error to direct a verdict.

2. SAME—*Where a Verdict May Be Directed.*—When the evidence given at the trial, with all inferences that the jury can justifiably draw from it, is insufficient to support a verdict for the plaintiff, and such verdict, if returned, must be set aside, the court is not bound to submit the case, but may direct a verdict for the defendant.

Assumpsit.—Trial in the Circuit Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Verdict and judgment for defendant; error by plaintiff. Heard in this court at the March term, 1899. Reversed and remanded. Opinion filed October 19, 1899.

**Statement.**—Plaintiffs in error, John A. Barnes and Charles E. Barnes, insurance brokers, doing business in Chicago under the name of John A. Barnes & Co., made a contract in writing with defendant in error, which is as follows:

" John Barnes & Co., party of the first part, agrees to construct, erect and place in a thorough and workmanlike manner, an improved system of automatic sprinklers in a building occupied by the Western Wheel Works, party of the second part, situated west of Wells street, between Siegel and Schiller streets, in the city of Chicago, described on plan attached, as ' A,' ' B,' ' C,' ' D,' ' E ' and ' G,' and porches and stairways adjoining ' E ' on the west, boiler

room ' A ' excepted, in accordance with specifications, as per annexed schedules ' A ' and ' B,' which are hereby made a part hereof.

Party of the second part agrees to pay party of first part for said work complete, $8,309 as follows: One-third of the purchase price upon delivery of the necessary piping, fitting and valves on premises, and commencement of work; one-third upon completion of work and approval of same by the Chicago Board of Underwriters, and the balance within sixty days thereafter.

The party of the second part hereby further agrees that, upon completion and approval of work herein specified, they will delegate and authorize the said party of the first part to place for them the entire line of insurance upon the buildings herein described, and the contents thereof, in sound and reliable insurance institutions, to be first approved by the party of the second part, at the annual rate of sixty (60) cents per hundred.

The party of the second part agrees to maintain insurance at all times upon the property herein described, and contents thereof, amounting to not less than four hundred thousand dollars ($400,000).

The party of the second part further agrees that the party of the first part shall be delegated and authorized, upon the foregoing conditions, to place the insurance in the amount as herein provided, for five successive years.

The party of the first part hereby agrees to place the entire insurance upon the buildings herein described, and the contents thereof, in the amount above stated, at an annual rate of sixty (60) cents per hundred dollars for five successive years.

In witness whereof we have hereunto set our hands and seals the year and date herein written.

(Signed)    John A. Barnes & Co.,
Western Wheel Works,
Otto Unsicker, V. P. Western Wheel Works,
L. Schoeffler, Sec'y."

The contract, with reference to the erection of sprinklers mentioned in it, was performed and policies of insurance were obtained thereunder for the wheel works in June, 1896, by Barnes & Co., to the amount of $400,000, in different insurance companies, which were known among insurance men as board companies, all of which insurance

was approved and accepted by the wheel works. Some dissatisfaction arose between these companies and the wheel works by reason of which, upon the written request of the latter, the whole insurance was canceled on July 9, 1896, and Barnes & Co. about that time obtained other insurance to the same amount as that canceled, for the wheel works, pursuant to said contract, with what is known as Lloyd's Institutions and others, which insurance was for the period of one year, and after the terms and the nature of the several policies were explained to the wheel works by representatives of Barnes & Co., was approved by the wheel works and accepted.

Before the expiration of this latter insurance, premiums on fire insurance declined, and in June, 1897, could have been obtained at a price twenty cents per $100 cheaper than the price named in the contract.

Some time prior to June 3, 1897, there were negotiations between Barnes & Co. and the wheel works, in which a cancellation of their contract was sought by the wheel works, or a reduction of the rate of insurance to be procured thereunder by Barnes & Co.

June 3, 1897, Barnes & Co. wrote to the wheel works, saying that they had not heard from their " proposition relating to the cancellation of our insurance contract," and stating that they would " at once proceed to arrange for the renewal of the lines expiring early in July in accordance with the conditions of contract."

June 12, 1897, the wheel works answered the letter of Barnes & Co. of June 3d and stated, " we are not yet in position to give you a definite answer, but expect to be by the end of next week. Kindly do nothing in the matter until you hear from us."

About June 19, 1897, Mr. Bates, representing himself as attorney for the wheel works, called upon Barnes & Co. and had a conversation with Charles E. Barnes, one of the firm, regarding the insurance in question, and stated to him that the wheel works " were not satisfied with the policies which they had had during the past year, and that they

wanted insurance in companies regularly authorized to do business in this State." Mr. Barnes told him that his firm could place the insurance in the same companies that had carried the insurance the past year, with one or two exceptions, and those exceptions his firm would place in regular board companies. The companies in which the insurance had been carried after the change in July, 1896, were not regular board companies.

On June 29, 1897, Mr. Bates, as attorney for the wheel works, wrote to Barnes & Co., calling their attention to his conversation above stated, and that he had further said to them at that time that "as a large amount of that insurance was expiring early in July, the Western Wheel Works desire that you should schedule to it the companies in which you propose to place their insurance for the coming year, or for the balance of the term of your contract." The remainder of the letter is as follows:

"The junior member of your firm stated to me at that time that you would not place that insurance in companies admitted to do business in this State, and I told him if that was the fact, then the Western Wheel Works would certainly refuse to accept insurance in these outstanding companies, or of the character which you had been giving them. In order that there may be no mistake regarding our position in this matter, I beg, on behalf of the Western Wheel Works, to now request that by the first of July you furnish a schedule or list of the companies to the Western Wheel Works or to myself, in which you propose to place their insurance for the coming year, and as the Western Wheel Works insurance expires during the early part of July, if you do not furnish such a schedule or list of companies which are satisfactory to the Western Wheel Works, then it will be obliged to protect itself and secure its own insurance in good companies. In case you do not furnish to the Western Wheel Works, or to myself, a schedule of insurances in companies admitted to do business in this State, and satisfactory to the Western Wheel Works, by the first day of July, then the Western Wheel Works will consider its contract with you abrogated and at an end, and will procure its own insurance for the coming year."

Barnes & Co., on July 1, 1897, wrote to the wheel works

referring to Mr. Bates' letter and his request for a schedule of the companies, and said that they had no advices to the effect that Mr. Bates had authority to represent the wheel works, and also stated, " We can only say that we expect to renew your insurance expiring in July in the same institutions that have carried your line during the past year, with the exception of " one company (naming it and stating policies aggregating $14,000), as to which they said they would place this $14,000 of insurance in regular board companies.

About the 2d or 3d of July, Barnes & Co. sent a Mr. Carpenter to negotiate with the wheel works in an endeavor to get the latter to renew the insurance of the policies expiring in the same companies in which it had been carried the past year, and if he could not effect that, then to try and arrange to put the insurance in board companies. Carpenter was not successful in his mission, but it is not clear from the abstract whether he then proposed to the wheel works to write the insurance in board companies.

July 6, 1897, the wheel works wrote and acknowledged Barnes & Co.'s letter of the 1st of July, stated that Mr. Bates was authorized to represent the wheel works in all matters which arose under their contract, and further stated " that the insurance which you propose to furnish us is not satisfactory to us; is not in companies authorized to do business in this State, and we decline to accept it, and as you decline to furnish us the insurance provided for in the contract, we shall place it ourselves."

The letter of Barnes & Co. of July 1st is the first notice from them to the wheel works that they questioned Mr. Bates' right to represent the wheel works in the matter of this insurance, and the letter of the wheel works of July 6th to Barnes & Co. is the first response made by the wheel works, so far as appears from the record, that Mr. Bates was their representative in the matter.

July 7, 1897, Carpenter, for Barnes & Co., made another effort to renew the insurance in the same companies which wrote the insurance for the past year, and finally offered

Barnes v. Western Wheel Works.

to Mr. Schoeffler, the secretary and treasurer of the wheel works, to place the insurance in board companies 'at the new board rates, to which offer he testifies that Mr. Schoeffler replied that " if I had made that proposition earlier he did not know but that it might have been favorably considered, but now it was too late." This witness also says that this conversation on July 7th, " was two or three days before the expiration of these policies of insurance."

Counsel for the wheel works say in their brief that some of these policies expired as early as July 1st, and from that up to July 9, 1897. They make no reference to the abstract or record on this point, and we are unable to find from either that this was a fact. It appears from the abstract that plaintiffs in error introduced in evidence " thirty-two insurance policies like the two following," but it does not appear they were read. The two following appearing in the abstract and also in the record, expired July 9, 1897.

It was also stipulated that the policies furnished to the wheel works were " similar to that here read in evidence," which evidently refers to the two policies which expired July 9, 1897.

During the course of the trial counsel for Barnes & Co. offered to prove by the witness Carpenter, then on the stand, the ability of Barnes & Co. to have placed, on the afternoon of July 7, 1897, insurance to the extent of $400,000 in board companies in the city of Chicago. This was objected to by counsel for the wheel works, the objection was sustained and an exception duly preserved.

At the close of all the evidence, the substance of which has been stated, the trial judge, on motion of defendant in error, instructed the jury to find their verdict for the defendant. The verdict was accordingly rendered, upon which the court, after overruling a motion for a new trial, rendered judgment in bar of plaintiffs' action and for costs of suit, to reverse which this writ of error is prosecuted.

Hunt & Ward, attorneys for plaintiffs in error.

Bates & Harding, attorneys for defendant in error.

MR. JUSTICE WINDES delivered the opinion of the court.

The only matters to be considered are whether the learned trial judge should have submitted the cause to the jury and whether it was error to exclude the offer of proof made by plaintiffs in error mentioned in the statement of the case. Other questions relating to matters of procedure are discussed in the briefs, but we deem it unnecessary to consider them.

We are of opinion that, from the evidence appearing in the record, there was a question of fact which should have been decided by the jury, under proper instructions from the court, to wit: whether there was such a breach of the contract by the wheel works as to form a basis of recovery against it. If the wheel works violated the contract by unreasonable action on its part in failing and refusing to approve and accept the insurance offered to it by Barnes & Co. even as late as July 7, 1897, then Barnes & Co. were entitled to recover; but if Barnes & Co. acted unreasonably in their repeated efforts, up to July 6, 1897, to get the wheel works to renew the insurance in the same companies as wrote it the past year, then they are not entitled to recover.

Counsel for defendants in error, in their brief, concede that "The questions involved in this case are more questions of fact than questions of law," and we therefore deem it unnecessary to refer to the authorities cited by them.

Inasmuch as the statement of the evidence is full, and as there may be another trial, we do not discuss it nor its weight, that being a question peculiarly for the consideration of a jury in the first instance.

In the case of Offutt v. The World's Col. Exp., 175 Ill. 472, in which the power of the trial court to take a case from the jury is very fully discussed, and the previous decisions of the court reviewed, it was said:

"We think the more reasonable rule, which has now come to be established by the better authority, is that when the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such verdict, if returned, must

be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant." * * *. "It is true that such motions are not to be regarded with favor. The province of the jury must not be invaded (Frazer v. Howe, 106 Ill. 563), and where reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions, the evidence must be submitted to the jury."

Also in the case of C. & N. W. Ry. Co. v. Hansen, 166 Ill. 629, the court said:

"Where the facts are such that reasonable men of fair intelligence may draw different conclusions, the question of negligence must be submitted to the jury; but if the court can say that but one reasonable inference can be drawn from the facts, the court should act accordingly." (Citing cases.)

To like effect is the case of Siddall v. Jansen, 168 Ill. 46, and No. 8319 of this court; Groszewski v. Chicago Sugar Refining Co., not yet reported.

In the case of Rack v. C. C. Ry. Co., 173 Ill. 289, the Supreme Court, in considering this question, said:

"The only question is whether any evidence was given which, if true, would have tended to support a verdict for the plaintiff."

We do not feel justified in holding, as matter of law (however that might be as matter of fact), that when all this evidence is considered, with all the inferences that the jury could justifiably draw from it, it is insufficient to be submitted to the jury. We think that reasonable men of fair intelligence, in considering it, might reach different conclusions; also that there was evidence which, if true, would have tended to support a verdict for plaintiffs in error.

If, as a matter of fact, under the circumstances shown in evidence, the wheel works were not justified, on July 6, 1897, in declining, as it did, to accept the insurance offered by Barnes & Co., and in proceeding to place its own insurance, then the question as to the ability of Barnes & Co. to furnish other insurance to the amount of $400,000 in board companies, on the afternoon of the day following, became

material and important, because, under the contract, they were bound to furnish that amount of insurance during the existence of the contract to the wheel works, which should be approved by the latter. We are of opinion that the offered proof in this regard should have been allowed. For this error and in instructing a verdict for defendant in error, the judgment is reversed and the cause remanded.