## South Chicago City Ry. Co. v. Frank T. Kinnare, Adm., etc.

1. ORDINARY CARE—*Reciprocal Duties of a Bicycle Rider and Employes of a Street Car Company.*—A man on a bicycle in a public street, occupied by an electric railway, is bound to exercise ordinary care for his own safety, and the employes of the railway are bound to use the same degree of care not to injure him; but what each is required to do depends upon the situation under which such exercise of care is demanded.

2. NEGLIGENCE—*Omission of a Duty Unexpectedly Arising.*—Where an alleged negligence consists of a duty suddenly and unexpectedly arising it is incumbent upon the plaintiff, in an action for personal injuries, to show that the defendant or its servants had an opportunity to become conscious of the facts from which it arose and a reasonable opportunity to perform such duty.

3. ELECTRIC CARS—*Duty of the Motorman.*—The motorman in charge of an electric car in a public street is bound to notice the presence of vehicles ahead of his car, either directly, or so close to the track that there is danger of a collision, but he is not bound to apprehend that a vehicle proceeding on a line parallel to the track and at a safe distance from him will, other than at a crossing or in the immediate vicinity of one, diverge from its course and go upon the track or so near to it as to be struck by his car.

4. SAME—*Duty of the Motorman to Give Warning to Drivers of Vehicles.*—It is the duty of a motorman in charge of an electric car running in a public street to notice what vehicles ahead of him and near the track are doing, and if he sees one going upon the track or so near to it as to be in danger of being struck by his car, to warn the driver of such vehicle, and so far as he is able, for the purpose of preventing a collision, to arrest the progress of his car.

5. SAME—*What the Motorman May Assume.*—If a person is seen upon the track or near to it, and is apparently capable of taking care of himself, the motorman should give warning by sounding his gong, and having done so, he may assume, so long as the danger does not

South Chicago City Ry. Co. v. Kinnare.

become imminent, that such person will leave the track before the car reaches him; but this presumption is not to be indulged in with reference to children who are too young to appreciate the danger, nor with regard to those who appear to be in a peril from which they are unable to extricate themselves.

6. INSTRUCTIONS—*In Actions Against Street Car Companies for Causing the Death of a Person.*—In an action against a street car company for damages in negligently causing the death of a person, under a declaration charging that its car ran against and struck the deceased, an instruction which tells the jury that if they find from the evidence that the deceased ran his vehicle into the side of the car and thereby caused the accident their verdict should be for the defendant, is proper, and should be given.

**Trespass on the Case.** Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Reversed and remanded. Opinion filed July 23, 1901.

**Statement.**—This was an action to recover damages occasioned by the death of Paul Christensen. It appeared that one Sunday, about noon, Paul Christensen and a companion were going north on Stony Island avenue, in the city of Chicago, each riding a bicycle. A train of defendant, propelled by electricity and consisting of two cars, was then proceeding north upon the same street. The first witness to the accident, called by the plaintiff, testified that he was at the time riding on the trailer; that he saw the deceased struck; that he and another gentleman were riding on the east side of the track and going north, as was the car; that a buggy was going south, also on the east side of the track; that two bicycle riders, when witness first saw them, were riding along without anything in their way, about six or seven feet from the track, " where most all the wheels generally ride, their best place to ride, because it is on the pavement;" that when the deceased started to pass the buggy he was about 150 feet in front of the car; that as he got alongside of the buggy the motor car had overtaken him, and he was between the motor car and the buggy; that when the front of the car was passing deceased he was so close to the car that he was almost ready to fall on it, and witnesses expected that he

would be caught; that the deceased touched his hand on the front of the car to get away from it, and that kind of unbalanced him on his wheel, and he grabbed his handlebars again, and he was so close to the car he tried to get away, and the foot-board of the trailer car struck the tire of his front wheel and turned it right cross-ways, and that threw him right over, with his head on the side of the car; that the buggy was going merely at a trot; that if it had been going very fast it would have given the deceased room to get out; that the buggy was going down the center of the roadway when the witness first noticed it; that to the east of the buggy, between it and the street curb, was about seven feet; that the other man, riding with Christensen, turned to the right and went around the buggy on its side, while Christensen turned to the left; that when Christensen put his hand out and touched the car he was back of the motor car a seat or two; " that seemed to excite him; he wabbled. I expected him to fall on the car every minute, and I kept my eye to see how he was going to get away from the car; he was still between the car and the buggy." The witness continuing said :

" I think Christensen could have turned to the right. I was surprised when he turned to the left, and that is the reason I paid attention. I was wondering why he turned to the left. At the time I thought he made a mistake by doing so, and I noticed it in particular, that he probably made a mistake, and the car had overtaken him really before he passed the buggy. He turned from the curb of the street to go to the left, just right in front of the horse. He was riding right parallel with the car, and he seemed to be acting as if he was trying to hold his balance until the car got by, but the wheel wabbling the way it did, and he being so nervous, and being cornered in that way, the wheel, the minute it struck, it turned the bicycle right cross-ways and threw his whole heft right over on the car. In talking with Dr. Fish I said Christensen used poor judgment to turn to the left, of course, which I think he did. He should have turned to the right. He didn't turn out for the buggy until he got pretty close to it; between from eight to twelve feet. He was all of 150 feet ahead of the car, if not more, when I saw him turn."

Mr. Buckley, a resident of Muskegon, Michigan, testified on behalf of the defendant as follows:

"The buggy was ten feet from the head end of the motor, and the buggy and horse were ten feet away, and the man was between, and all of a sudden the horse turned so that it crowded the man into the car. After he had passed the front end of the motor, the horse turned at such an angle as to crowd him into the trailer. The horse crowded him into the car. The horse didn't run toward the car, merely jumped toward it. The horse was a little ahead of me when he shied."

The car was running at from twelve to fifteen miles an hour. There was testimony that the gong was not sounded and that it was.

S. A. Lynde, attorney for appellant.

Wing & Chadbourne and James C. McShane, attorneys for appellee.

Mr. Justice Waterman delivered the opinion of the court.

Christensen was bound to exercise ordinary care for his own safety, and appellant was bound to use the same degree of care not to injure him. What each was required to do in order to comply with the obligations just stated, depended upon the situation under which such exercise of care was demanded. Christensen knew that appellant was operating upon the avenue an electric road; that its cars were propelled with great speed; that its duty to the public required it to move its cars at a rapid rate and in such a manner that they should arrive at the various points upon its line with reasonable regularity as to time. Appellant knew that Christensen and others of the public had with it equal right to the use of the street, save that as its cars moved upon a fixed track, other vehicles must reasonably give way for the movement of its carriages. Appellant knew that bicycle riders, buggies and wagons were likely to be moving along the street, and might desire to cross over or go upon its tracks, and that they had a right reasonably so to do. Most, if not all, these things were known

to Christensen. Each upon the day in question was moving along this street, wherein they knew many others might be passing and encountered. The accident seems to have happened as the result of a sudden and unforeseen juxtaposition of affairs. It may have been immediately caused by the sudden shying of a horse drawing a buggy proceeding southward, in connection with a failure of the motorman to sound his gong for such a number of times as to attract the attention of Christensen. It may have happened as the result of Christensen's turning to the left of the buggy, instead of passing it to the right. He may have been led so to do by the proximity of a wagon, also passing southward, both buggy and wagon, as it would seem, on the wrong side of the road, that is, passing southward on the left instead of the right side of the street. It may have been caused by the failure of appellant's servants to stop the car so soon as they perceived, or with reasonable care might have perceived, that Christensen was in such a position of danger as required them so to do. Christensen may have made a mistake or failed to exercise ordinary care, and such mistake or lack of care may have conduced to the injury. Appellant's servants may have been guilty of negligence in failing to sound the gong sufficiently, or in failing to slacken the speed or stop the car when they perceived, or ought to have perceived, the peril Christensen was in. Christensen may not have been guilty of negligence, or may have been guilty of only such slight negligence as is consistent with ordinary care.

The situation out of which this lamentable occurrence grew, the duty and obligation of the respective parties, under the circumstances, should have been presented to the jury under instructions clearly and correctly defining the legal duties and rights of the parties under the circumstances. Where an alleged negligence consists of an omission of a duty suddenly and unexpectedly arising, it is incumbent on the plaintiff to show that the circumstances were such that the defendant or its servants had an opportunity to become conscious of the facts from which

the duty arose, and a reasonable opportunity to perform such duties. In the present case the motorman was bound to notice the presence of other vehicles ahead of his car, either directly or so close to the track upon which he was running that there was danger his car would run into them. He was not bound to apprehend that a vehicle proceeding on a line parallel to the railroad track, and at a safe distance from it, would, other than at a crossing, or in the immediate proximity thereof, diverge from within its parallel course, and go upon the railroad tracks, or so near thereto, that it would be struck by the car. Nevertheless, he was bound to notice what vehicles near to the track were doing; and if he saw one going upon the track, or so near thereto as to be likely to be in great danger of being struck by his car, to not only warn the driver of such vehicle, but also, in so far as he could, prevent a collision by arresting the progress of his car. If a person is seen upon the tracks, or near thereto, and is apparently capable of taking care of himself, while the motorman should give warning by sounding his gong, having done so, he may assume that such person will leave the track before the car reaches him, so long as the danger of injuring him does not become imminent, and no longer; but this presumption can not be indulged in with reference to children too young to appreciate the danger, nor with regard to those who appear to be in a peril from which they are unable to extricate themselves. Booth on Street Railways, Secs. 305, 306, 307; Hestonville R. R. Co. v. Kelley, 102 Pa. St. 115, 120; Thomas v. Passenger Ry. Co., 132 Pa. St. 504, 515, 516; Citizens St. Ry. Co. v. Carey, 56 Ind. 396, 404; Button v. Hudson R. Ry. Co., 18 N. Y. 248, 255, 256, 257, 258; Bulger v. Albany Ry. Co., 42 N. Y. 459; Hearn v. St. Charles R. R. Co., 34 La. An. 160, 163.

The declaration in this case charges that defendant's street car ran against and struck the said Paul Christensen. Appellant asked the following instruction:

" If the jury shall find from the evidence that Christensen ran his bicycle into the side of defendant's car, and

thereby caused the accident, then they are instructed that under the declaration in this case their verdict must be for the defendant."

In view of the allegations of the declaration, this instruction, as asked, should have been given. The court gave the following instruction :

" If the jury shall find from the evidence that, as the defendant's car approached Christensen, he was riding on the roadway east of the tracks, at a safe distance, and that there was sufficient space between the buggy and the track to have enabled him to pass in safety, then they are instructed that the motorman was not bound to anticipate that Christensen would, *if he knew, or by the exercise of ordinary care ought to have known of the proximity of said car*, run his bicycle so near to the car as to run into the side of it, or be struck by the side of it, and *the motorman was not bound* to slacken the speed of his car in passing Christensen, *unless he knew, or by the exercise of reasonable or ordinary care ought to have known, that the deceased did not know of the proximity of said car. The court further instructs you that the court has no opinion and expresses no opinion as to what the deceased knew, or ought to have known, or what the motorman knew, or ought to have known, at or before the time of the collision. You must determine this from the evidence and the evidence alone.*"

The italicised portions of this instruction are that which was inserted and added to an instruction asked by the defendant. As given, the instruction throws upon the motorman the burden of knowing that the driver of a vehicle, at a safe distance from the railroad track, knows, or in the exercise of ordinary care ought to know, of the proximity of the car, and unless the motorman knows this he is bound to use his utmost efforts to slacken the speed of his car; so that if the driver of such vehicle suddenly swerves and runs his carriage down upon the track, he will not be injured. The defendant asked the court to instruct the jury as follows :

" If the jury shall find from the evidence that Christensen was not skilled in riding a bicycle, and that the accident was caused by want of skill or inability on his part to properly manage it, then they are instructed that their verdict must be for the defendant."

There was nothing in the evidence warranting the conclusion that the injury to Christensen was wanton or willful. If, therefore, the accident was caused by want of skill or inability on his part to manage his bicycle, the plaintiff was not entitled to recover, although other things may have conduced to the accident. The modification of the instruction by adding after the words "manage it," "that alone," should not have been made. We can not approve of some of the language used by one of the attorneys for the plaintiff in addressing the jury. The evidence did not show, as such words are ordinarily understood, that appellant had killed Christensen. So far as appears from the evidence, his death was the result of an accident, due, it is claimed, to the negligence of appellant, but, as we have before said, the evidence did not show a wanton or willful disregard of the rights of Christensen, nor was there anything in the conduct of counsel for defendant warranting the statement that "justice was a thing they did not understand." Nor do we think that plaintiff's eloquent attorney would, save in the heat and under the excitement of a trial, make such an accusation. The attorneys upon each side were zealously and honorably endeavoring to serve their respective clients; that either should regard the case dispassionately or have the same conclusion as to its merits, is not to be expected. The judgment of the Circuit Court is reversed and the cause remanded.