## North Chicago Street Railway Company v. Lewis C. Canfield.

### Gen. No. 11,579.

1. UNLAWFUL SPEED—*what not, at cross streets.* Held, in this case, that there was no evidence tending to show that a speed of from seven to ten miles an hour was not a reasonable and lawful rate between cross streets at the midnight hour and at the place involved in this case.

2. TRACTION COMPANY—*duty of, to exercise care.* A traction company while it is in duty bound to operate its cars with reference to what may be reasonably anticipated, yet it is not obliged to guard against what cannot be reasonably expected, as, for instance, a passenger seeking to alight in the middle of a block where the cars of such company were not expected to stop and upon a side of the car where a train was likely to pass at any moment.

3. GUARD-RAIL—*effect of absence of, upon question of negligence.* A guard-rail upon street cars does not necessarily prevent passengers from alighting from the side of the car upon which it is placed. It is a mere warning against such an act, and its absence is not, as a rule, and was not in this case, the proximate cause of the injury complained of.

4. LOOK AND LISTEN—*when failure to, contributory negligence.* It is negligence for a passenger upon a street car, when attempting to alight therefrom in the middle of a block and at a point where the cars are not accustomed to stop, and while the same is in motion, to fail, without excuse, to look and listen for a car approaching from the opposite direction.

5. CONTRIBUTORY NEGLIGENCE—*when, question of law.* The question of contributory negligence becomes one of law for the court when the undisputed facts with all the inferences that can be justifiably drawn from the evidence in behalf both of the plaintiff and the defendant are such that reasonable minds must, without hesitation or dissent, deem the conduct of the plaintiff which caused the injury clearly and palpably negligent.

Action on the case for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Reversed with finding of facts. Opinion filed March 7, 1905.

**Statement by the Court.** This is an action brought by appellee to recover for personal injuries. The cause has been in this court before and the main facts are sufficiently stated in 98 Ill. App. 1. Upon the former trial the Super-

ior Court instructed the jury to find for the defendant at the conclusion of the plaintiff's case. The judgment was reversed upon the ground that there was evidence which should have been submitted to the jury and that certain evidence offered in the plaintiff's behalf was erroneously excluded. Upon the second trial a verdict and judgment have been rendered in favor of the plaintiff and the defendant now appeals.

The accident occurred when appellee—a passenger riding on a south-bound grip car of one of appellant's trains running on North Clark street, Chicago—jumped from the car while the train was in motion, in the middle of the block between Huron and Erie streets, alighting a few feet in front of a north-bound train, by which he was struck and injured before he could get out of its way.

JOHN A. ROSE and LOUIS BOISOT, for appellant; W. W. GURLEY, of counsel.

CHARLES B. ELDER, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is contended in behalf of appellant that the defendant was not guilty of negligence causing appellee's injury; that the latter was not in the exercise of ordinary care and his contributory negligence was responsible for the accident. Appellant insists that on both these points the evidence wholly fails to justify the verdict and judgment.

The alleged acts of negligence for which appellee claims the street railway company should be held responsible are first, the failure to slacken the speed of the north-bound car as it was about to pass the approaching south-bound train from which appellee alighted; second, not ringing the gong on the north-bound car; third, running at excessive speed without a headlight; and fourth, not providing a guard-rail on the side of the south-bound grip car next to the parallel north-bound track.

The question for our consideration is not alone whether appellant was negligent as alleged, but whether such negli-

gence, if any, was the proximate cause of appellee's injury. The immediate cause was not that appellee got off from a rapidly moving car. He did that without injury. He was injured because he suddenly placed himself on the north-bound track in front of an approaching train in such a way that it was equally impossible for him to get out of its way and for the gripman to stop the train in time to avoid striking him. There is, we think, no substantial grounds for regarding the alleged failure of the gripman to slacken the speed of the north-bound train when about to pass the moving south-bound train between street intersections as negligence, in view of the undisputed facts. Each train was moving at from seven to ten miles an hour, an ordinary rate of speed, it appears, for that midnight hour. There is no evidence tending to show that this was not a reasonable and lawful rate between cross streets at that time and place. Rack v. Chicago City Ry. Co., 173 Ill. 289–294. If it was the duty of appellant as a matter of law to slacken the speed of the north-bound train at that point, it was equally its duty to slacken the speed of the other train also when they were about to pass. Such a rule if adopted would require street cars when passing each other anywhere on the line to slow up with or without apparent reason for so doing, so that if a passenger chooses to get off in front of either he may do so and still escape injury. It is plain that such practice would seriously interfere with the practical operation of the road. There was nothing in this instance to indicate a reasonable probability that appellee would get off the south-bound car at that time and place as he did, and the gripman of the north-bound car was not bound to anticipate such an occurrence. The presumption was that nothing of that kind would occur. As said in Rack v. Chicago City Ry. Co., *supra*, p. 294, quoting from the 56 Ind. 396: "We do not think it is the duty of a street car driver to stop his car or to constantly creep along at a snail's pace for fear or anticipation that some child may possibly throw itself under his horse in the absence of anything indicating the probable oc-

currence of such an act.   *   *   *   It seems to us that he was not bound to slacken his speed, it then being but ordinary, till there was a necessity for it." To charge the gripman with negligence under such conditions there should be proof of knowledge, or facts equivalent to knowledge, of what appellee was about to do ": at least long enough before the injury inflicted to have enabled him to have formed an intelligent opinion as to how the injury might be avoided and apply the means." C., B. & Q. R. R. Co. v. Johnson, 103 Ill. 512–520; U. S. Exp. Co. v. McCluskey, 77 Ill. App. 56–58. We find no such evidence in this record. In Ackerstadt v. Chicago C. Ry. Co., 94 Ill. App. 130–136, we said: "The rules of appellee cannot be reasonably construed to apply to approaching cars between street crossings, where it is manifest, by the exercise of reasonable observation, that the car that has been standing still at a crossing is resuming its travel and has already reached half its customary rate of speed before the trains meet. Nor can it be said that as a matter of law, irrespective of appellee's rules, one car approaching another between street crossings must slacken speed because of the possibility that some passenger on one car or the other may fall from his car in front of the other, when there is no reason to anticipate such an occurrence. Of the vast number of cases cited by appellant we have examined enough to satisfy us that none of them hold a doctrine opposed to what we have said." Idem, 194 Ill. 616–624.

Was there a failure to ring the gong, and if so, was such failure negligence? Upon the former hearing in this court it was said to be a question of fact which should have been submitted to the jury "whether the gong or bell ought to have been, and if so was sounded, as the defendant's car approached Huron street, and if no such warning was given, whether the failure to do so was negligence, and if so whether the injury to plaintiff was the result of such negligence." Upon the question of fact, whether the gong was rung before the accident there is, in the present record,

conflict of evidence.   This, however, relates to the time
when the trains were approaching each other, before either
had reached the middle of the block where the accident oc-
curred.   The north-bound car was at the time of the acci-
dent at least a half block, a hundred and twenty-six feet,
as the evidence shows, from Huron street, and the question
is not what the duty of the gripman on the north-bound
car would have been when approaching that street, but
what was his duty to appellee who was then riding in safety
on the approaching south-bound car.   Upon this question,
what has been said above with reference to the alleged duty of
the gripman to slacken speed when about to pass the south-
bound train in the middle of a block is applicable.   We
are not prepared to hold, as a matter of law, that the grip-
man on the north-bound train owed a duty to passengers
on the approaching south-bound train to keep his gong
ringing to advise them that his train was about to pass
their train, when both trains were in full motion and there
was nothing to indicate any necessity for so doing.   "In
order to justify a recovery it is not sufficient to show that the
defendant has neglected some duty or obligation existing
at common law, or imposed by statute, but that the defend-
ant has neglected a duty or obligation which it owes to him
who claims damages for the neglect."   Williams v. C. & A.
R. R. Co., 135 Ill. 491–496.   If the gripman on the north-
bound car had any reason to expect that appellee would
then and there alight, as he might have had, for instance,
at a street crossing, or when the south-bound car was at a
stop, a very different situation would be presented.   Ap-
pellant is in duty bound to operate its cars with reference
to what may be reasonably anticipated.   It is not obliged
to guard against what cannot reasonably be expected.
Was it reasonable to expect that appellee or any passenger
would voluntarily get off a rapidly moving car in the mid-
dle of a block where these cars do not stop and upon the
side where a train was likely to pass at any moment?   We
think not.

But it is claimed that appellant was negligent in run-

ning the north-bound car at an excessive rate of speed without a headlight. There is, as we have said, no evidence tending to show that the rate of speed was excessive. Nor do we find any direct evidence that the headlight was not burning. On the other hand the evidence preponderates tending to show that it was burning. It is undisputed that after the accident the headlight was removed from the front of the north-bound car and used to light up the place where appellee lay after the accident, " to see what shape he was in." Appellee says he did not see any lights of the north-bound car before he got off, but it is unquestioned that the cars of the north-bound train were lighted. The charge of negligence in this respect is not, we think, sustained by the evidence.

The last of appellee's contentions above referred to is that appellant is liable because of negligence in failing to provide a guard-rail on that side of the south-bound car upon which appellee had been riding and from which he got off in front of the north-bound car. It is conceded that the place where he got off was in front of his boarding-house, in the middle of the block, between Huron and Erie streets. He was not injured by the act of getting off. He got off in safety. He was not thrown or jerked off, nor did he fall from the car. He got off deliberately, apparently where he intended to get off. He gave no signal to the conductor to stop at the Huron street crossing, and did not wait until the next street crossing should be reached. The absence of the guard-rail was not the moving cause of his getting off on that side. He could have gotten off on the other side by passing other passengers seated on the same seat. The seat ran the entire width of the car. There was a foot board on both sides. He chose to get off on the danger side to suit his own convenience. It was nearest to his destination on that side of the street. He got off directly in front of his boarding-house rather than stop the car at a crossing and walk half a block. A guard-rail does not ordinarily make it impossible for a passenger to get off on that side. It is intended as a warn-

ing. But appellee was not misled by its absence. He knew there was none, and states that he knew the other track was on that side and that the north-bound trains ran there. Clearly the absence of the guard-rail was not the proximate cause of the injury, and it is immaterial in this case whether failure to provide one be deemed negligent or not. It was not the active cause of the injury complained of.

It is insisted on behalf of appellant not only that there is no proof of actionable negligence on its part, but that if there had been appellee is barred from recovery by his own contributory negligence. It appears from the evidence that as the south-bound car approached Huron street, which bounded on the north the block in the middle of which was his boarding place, half way between Huron and Erie, the next street south, appellee rose from his seat; but he gave no signal to the conductor then or at any time to stop the train. At that time the north-bound train must have been a full block away, south of Erie street. Although looking in a general way to the south, appellee frankly says that he did not look for, as well as that he did not see, the north-bound car approaching. As he swung off he found himself on the track immediately in front of the north-bound car which struck him before he could get away. He was taken by surprise. He says: "I saw nothing until I alighted from the car and then I saw this cable car." " So far as stepping down is concerned, I landed safely." He knew the north-bound cars ran on that track.. His eyesight was good. There were lights on the approaching car. Undoubtedly he would have seen it in time to avoid getting off in front of it had he taken the common and ordinary precaution to look ahead. It is true that a failure to look and listen is not always negligence. It is negligence, however, when under circumstances such as are here in evidence, there is nothing shown to excuse the failure to exercise reasonable and ordinary care to look out for a danger reasonably to be anticipated. It is said that when appellee stood up it was notice to the conductor that he was about

to get off. If so conceded, it could not be deemed notice that he intended to get off immediately, either at Huron street or in the middle of the next block, when no signal to the conductor was given or attempted. In fact the evidence tends to show beyond reasonable doubt that appellee did not intend to get off at Huron street, did not want to have the car stopped there or at all, and that he intended from the first to get off just when and where he did, opposite his boarding house, while the train was in motion.

It is true that appellant is bound to exercise the highest degree of care and caution consistent with the practical operation of its road to provide for the security of passengers while transporting them and while they are getting on and off its cars. W. C. St. Ry. Co. v. Johnson, 180 Ill. 285-6-7. The road is responsible for injury to its passengers resulting from negligence when the passenger is at the time exercising ordinary care for his own safety. C. & A. R. R. Co. v. Byrum, 153 Ill. 131-134. But where a passenger voluntarily leaves the car from a moving train, not at a stopping place, not after indicating a desire to get off at a particular place, but without notice and in the middle of a block, he makes it impossible for the carrier to continue to care for his safety, and if injured after so getting off, must be deemed to have relieved it from obligation to him as a passenger. It owed him thereafter only ordinary care. The train had not reached a place where in the exercise of ordinary care a passenger might rightfullly leave it. It is to be remembered that it was not the mere act of leaving the car as he did, but leaving at that time and place which caused the injury. It is true the question of contributory as well as other negligence in a particular case is ordinarily a question of fact for a jury (Springfield Ry. Co. v. Hoeffner, 175 Ill. 634-638), and it is not negligence *per se* for a passenger to get off a car in motion, even though he be injured in so doing. Appellee was not so injured.

Negligence becomes a question of law for the court when, as here, the undisputed facts with all the inferences that can be justifiably drawn from the evidence in behalf both of

plaintiff and defendant are such, that reasonable minds must without hesitation or dissent deem the conduct of appellee which caused the injury clearly and palpably negligent. Boyle v. I. C. R. R. Co., 88 Ill. App. 255–257; Bjork v. I. C. R. R. Co., 85 Ill. App. 269–272. He has paid a heavy price for his mistake, but we can find no just nor lawful ground upon which to base a judgment is his favor.

The contributory negligence which caused the injury in this case was not, as we have said, the mere getting off the moving train. That was safely accomplished. It was that appellee negligently placed himself in front of another moving train, by which he was injured. There is no evidence tending to show that he was in any way misled without fault on his part. Boyle v. I. C. R. R. Co., 88 Ill. App. 255–259; I. C. R. R. Co. v. Batson, 81 Ill. App. 142–153.

The question before this court at the former hearing was, whether at the close of the plaintiff's case there was evidence which should be submitted to the jury. We held that there was. The question now before us is, whether upon the whole evidence appellee is entitled to recover, and the question is not precluded by the former decision. Brown Hoisting & Con. M. Co. v. Bennett, 96 Ill. App. 514.

In view of the conclusion stated, it is clearly unnecessary to consider other points presented by counsel. The judgment of the Superior Court is reversed with a finding of facts.

*Reversed with finding of facts.*