# Arthur Ackerstadt v. Chicago City Ry. Co.

1. PRACTICE—*When the Court Will Direct the Verdict.*—An instruction to the jury to find a verdict for the defendant should be given where there is no evidence tending to show a right of recovery.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ABNER SMITH, Judge, .presiding. Heard in the Branch Appellate Court at the March term, 1900. Affirmed. Opinion filed March 12, 1901.

GEO. WILLARD, ANDREW J. HIRSCHL and SIDNEY B. SMITH, attorneys for appellant.

WM. J. HYNES and W. J. FERRY, attorneys for appellee; MASON B. STARRING, of counsel.

MR. PRESIDING JUSTICE SHEPARD delivered the opinion of the court.

This was a suit brought by the appellant to recover for personal injuries sustained by him by falling or being thrown from a car of the appellee, on which he was riding as a passenger. At the conclusion of the plaintiff's evidence the court instructed the jury to find a verdict for the defendant, which was done, and judgment went accordingly. It is said, in the recent case of Landgraf v. Kuh, 188 Ill. 484, as follows:

" It is well settled in this State, that an instruction to the jury to find a verdict for the defendant should be refused, where there is evidence tending to show the plaintiff's right to recover. If there is evidence tending to show the plaintiff's right to recover, there must be a submission of the case to the jury. (Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. Baddeley, 150 Ill. 328.) 'If there is evidence which fairly tends to support the plaintiff's case, it must be submitted to the jury.' (Pullman Palace Car Co. v. Laack, 143 Ill. 242.) The question presented for our consideration, then, is not whether the evidence in this case was sufficient to support a verdict by the jury in favor of the plaintiff, but whether there was evidence tending to establish a cause of action."

The concluding sentence, so quoted, seems to make a dis-

tinction we have not before noticed in former opinions by the Supreme Court, since the abolition of the scintilla rule of evidence, between evidence not sufficient to support a verdict and such as tends merely to prove a cause of action. See Kinnare v. Klein, 88 Ill. App. 304, and Boyle v. Illinois Central R. R. Co., 88 Ill. App. 255. But it is not necessary here to do more than refer to that matter.

There is no question but appellant was a passenger of appellee at the time he was hurt. Was there, then, under the declaration and evidence, any neglect by appellee of the high degree of care and skill which it was in duty bound to use to carry him safely?

The declaration consisted of but one count, which charged, in effect, that appellee was a common carrier of passengers, along and upon its tracks in Wentworth avenue, in Chicago, and that appellant was a passenger in a car running north thereon at or near Fifty-seventh street, at which street he desired to alight, and that it was the duty of appellant to give him reasonable opportunity to alight then and there. The declaration then proceeds, as set out in the abstract:

"Yet the said defendant, well knowing or having reasonable and proper notice and opportunity to learn and know that said plaintiff desired to leave said car at said Fifty-seventh street, and while said plaintiff with ordinary care and speed was about to step off said car at said crossing at said time, the said car being then not in motion, and the said defendant knowing or having reasonable and proper notice and opportunity to learn and know that plaintiff was about to step off said car on the west side of said car, there being no barrier, and passengers being permitted by said defendant to get off and on said car from either side thereof, then and there negligently, carelessly and without proper regard for plaintiff's safety, started said car, and while said plaintiff was standing upon the step or run-board along the west side of said car, and with due and proper care was trying to step up therefrom and to regain his seat in said car after said car had started as aforesaid, said defendant negligently, carelessly, and improperly caused said car to be given a sudden and violent jerk forward, and at the same time negligently, carelessly and

improperly caused another of said street cars of said defendant, to be run south along said avenue upon said defendant's adjacent west track at a high and dangerous rate of speed, and without a proper lookout being kept for the safety of said plaintiff and others who were then and there passengers on said north-bound car, whereby and by means whereof said plaintiff lost his balance and hold upon the side of said north-bound car, and was whirled off on to the said west track upon which said south-bound car was approaching, and before plaintiff could regain his balance and get off from said west track, said south-bound car violently and with great force struck him and knocked him down in front of said last mentioned car, and shoved or dragged him along in front or partly underneath said car a long distance, to wit, thirty feet, whereby said plaintiff was seriously and permanently hurt, wounded and injured, and the flesh of his right hand and arm torn and lacerated, and the bones thereof crushed and broken, whereby, to save plaintiff's life from great danger, his said right arm had to be, and was, amputated and lost," etc.

As we understand the count, the negligence that is charged is that appellee, having notice and opportunity to know that appellant desired to get off the north-bound car, on which he was riding at Fifty-seventh street, and was about to step off, the car being then not in motion, appellee started the car, and while appellant was standing upon the foot-board and was trying to step back therefrom, and to regain his seat in the car after it had started, the car was improperly caused to move suddenly forward with a violent jerk, whereby he lost his hold and balance and was whirled off on to the west track, at a moment when a south-bound train was approaching on said west track at a high and dangerous rate of speed, and before appellee could recover himself he was run upon by the south-bound car, and was injured, etc.

The evidence tended to show that the north-bound car stopped on both sides of Fifty-seventh street, and that passengers had alighted therefrom on both crossings, and that then it had started and begun to move forward. There was evidence that the car stopped a sufficient length of time for passengers to alight, and that everybody who had given

any indication of a desire to do so had alighted in safety before the car started. Undoubtedly appellant wished and intended to leave the car at one or the other of the street crossings, but there was no evidence that he in any manner indicated such desire or intention to any person in charge of the car. The appellant himself testified, on cross-examination, that he did not give the conductor or anybody in charge of the car any signal that he wanted to get off, and that so far as he knew, "they had no idea" that he wanted to get off the car at Fifty-seventh street.

Appellant's home was at Fifty-third street, whither he was bound, about half a mile beyond Fifty-seventh street. The reason given by him for wishing to get off at Fifty-seventh street was because some fellow passengers, living contiguous to Fifty-seventh street, invited him and his wife to go home with them. He was sitting with them toward the rear of the car, and his wife was seated in a seat two or three rows in advance. As the car approached Fifty-seventh street, and as the passengers with whom he intended to go, arose from their seats to alight, appellant left his seat and stepped along on the foot-board to where his wife was sitting, to see if she would get off and go along with him. She declined to accompany him, and he handed her the keys to their home. At that time, when he gave his wife the keys, his companions whom he intended to visit, had left the car at the south side of Fifty-seventh street, and were walking home. During the time after he left his seat and while he was talking with his wife, the car had left the south crossing of Fifty-seventh street and proceeded across the street to the north crossing, where passengers alighted also, and had started up again, and was moving along at, probably, about half its usual speed. It was then that, in his own language, he "intended to step off."

It was just after appellant handed the keys to his wife that he fell. There was evidence by appellant's witnesses tending to show that he jumped, but we have taken only his own testimony and such other testimony as was most

favorable to him, as we are bound under the law to do, in considering the question that is primarily before us under the present record.

We observe no evidence, anywhere in the record, that tends to support the charge of the declaration that after the car started up, its motion was increased by a sudden and violent jerk. The inference is, on the other hand, quite strongly against such having been the case, from the fact that some of the witnesses were in doubt as to whether the car had even started from the crossing at all; although it is plain from appellant's own testimony as well as from what was done in stopping the car, and its position after appellant fell, that it had started and was moving when the accident occurred.

We are wholly unable to discover, either in the proof or its inferences, any negligence whatever in the operation of the car from which appellant fell.

The claimed error by the court in refusing to permit appellant to answer his counsel's question as to the length of stop at the north crossing, after he had positively testified that the stop was long enough for him to have gotten off, can not be allowed. Other testimony showed that the stop was a very short one, though long enough for other passengers to get off.

Coming now to the question as to whether there was negligence in the operation of the south-bound train, it is less plain.

It is not clear wherein the negligence alleged by the declaration in that regard, consists. But assuming that the negligence charged in that respect consists in running the south-bound train past the north-bound car at too high a rate of speed while the north-bound car was standing at the north crossing, or had just departed therefrom, what was the evidence concerning it?

Certain of the rules and regulations of the appellee governing the conduct of the operators of cars were introduced and read in evidence, as follows:

" When crossing prominent streets or passing a car or

train of cars which is stopped or running slow, drivers and gripmen will slacken speed and be sure that the car or train can be stopped immediately, if necessary, and conductors will keep a sharp lookout to help with hand-brakes in case of disabled brake connection.

"Avoid running into pedestrians and vehicles, especially at corners and cross streets."

We think there can be no doubt from the evidence but that appellant was picked up, after the accident, north of Fifty-seventh street, but the exact distance north is uncertain; some witnesses place the distance at about ten feet; another, at a car length or so, and others at varying distances—from one to five feet.

But perhaps the location of appellant at the time he was picked up does not aid very much in determining the rate of speed at which the south-bound car was moving, because he was carried along by the car—one or more witnesses testifying they saw him rolling along under the car—and it not being certain how far the car was north of Fifty-seventh street when he first fell. The direct evidence as to the direct rate of speed at which the south-bound car was traveling varied, also depending, probably, very much upon the point from which the witnesses viewed it. One witness, who observed it at about the middle of the block between Fifty-sixth and Fifty-seventh streets, testified it was then moving at a rapid rate of speed, "about twenty-five miles an hour;" another witness, who observed it at the same place, testified it was going at the usual speed, "about sixteen or eighteen miles an hour;" another witness, who was on the car that appellant fell from, testified that the south-bound car seemed to be running at the usual speed of "about twelve miles an hour"—presumably meaning at the time of the accident.

We observe no other direct evidence of the rate of speed at which the south-bound car was traveling. The inference, however, is that it was moving rapidly, from the fact testified to by all, that appellant was struck almost instantly after leaving his car, although the motorman had time to apply his brake and ring the gong after seeing appellant fall.

Now, if the north-bound car had been standing at the time when it was being nearly approached by the south-bound car, we should feel bound to hold that the question as to whether the speed of the latter, as so shown by the evidence, was negligently rapid or not, was one of fact that the jury should have passed upon.

But the evidence showing, unmistakably, that the north-bound car had left the crossing, while the south-bound car, going at the speed shown, was a considerable distance off, and had gotten under way and attained half its usual speed before the cars came abreast of each other, we think the question of whether the rate of speed of the south-bound car was negligent or not, ceased to be one of fact for the jury to decide. It being easily visible by the motorman of the south-bound car that the north-bound car had started from the crossing and was getting under way, he had the right to presume that all passengers intending to alight there had done so, and that the road was clear for him to go ahead.

The rules of the appellee can not be reasonably construed to apply to approaching cars between street crossings, where it is manifest by the exercise of reasonable observation that the car that has been standing still at a crossing is resuming its travel and has already reached half its customary rate of speed before the trains meet. Nor can it be said that, as matter of law, irrespective of appellee's rules, one car approaching another, between street crossings, must slacken speed because of the possibility that some passenger on one car or the other may fall from his car in front of the other, when there is no reason to anticipate such an occurrence. Of the vast number of cases cited by appellant, we have examined enough to satisfy us that none of them hold a doctrine opposed to what we have said.

In our discussion of the case we have purposely eliminated the question of contributory negligence by the appellant, which the trial court had before it.

The case as made by the appellant, giving to him the benefit of all inferences in his favor, does not tend to show

negligence by the appellee in any aspect of the declaration, and therefore we need not stop to inquire whether appellant was in the exercise of due care for his own safety, or not. It would have been the clear duty of the Circuit Court to have set aside a verdict for the appellant if one had been returned in his favor, and therefore, under the authorities referred to, *supra*, the judgment appealed from will be affirmed.