ARTHUR ACKERSTADT

*v.*

THE CHICAGO CITY RAILWAY COMPANY.

*Opinion filed February 21, 1902:*

1. STREET RAILWAYS—*right of motorman to presume that passengers have alighted from approaching car.* The motorman in charge of a street car who sees that a car which is approaching from the opposite direction on the other track has started up after stopping at a street crossing and is getting well under way, has the right to presume that all passengers who intended to alight at such crossing have gotten off and that the track is clear for him to go ahead.

2. SAME—*cars need not slacken speed when passing each other between street crossing.* Irrespective of the company's rules, it cannot be said, as a matter of law, that when cars going in opposite directions are approaching each other on parallel tracks between street crossings they must slacken speed because of the possibility that a passenger on one or the other of the cars may fall or jump from the car, when there is no reason to anticipate such an occurrence.

3. TRIAL—*what not proper re-direct examination.* If the plaintiff in an action against a street railway company testifies, on direct ex-

amination, that the car on which he was riding stopped long enough to permit passengers to alight and that it stopped long enough to have enabled him to alight, it is proper, on re-direct examination, to refuse to allow him to state how long the car stopped.

*Ackerstadt* v. *Chicago City Railway Co.* 94 Ill. App. 130, affirmed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ABNER SMITH, Judge, presiding.

SMILEY & CLARK, and JAMES S. HANDY, for plaintiff in error.

WILLIAM J. HYNES, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This is a writ of error to the Branch Appellate Court for the First District. The case was heard there on appeal from the circuit court of Cook county. The action was by plaintiff in error against defendant in error for the loss of his right hand, alleged to have been caused through the negligence of employees of the defendant. The plea was the general issue. Upon the trial, at the conclusion of all the evidence, the jury, in obedience to an instruction in writing by the court, returned a verdict for the defendant. A motion by the plaintiff for a new trial was overruled and judgment entered upon the verdict. The Appellate Court has affirmed that judgment. The same grounds of reversal urged in that court are insisted upon here: First, that the trial court erred in excluding evidence offered on behalf of the plaintiff; and second, in withdrawing the case from the jury.

There is no merit in the first point. The complaint is, that the court refused to allow the plaintiff to state, on re-direct examination, his recollection as to how long the car stopped at the crossing. He had testified on his

examination in chief that it stopped on both sides of
Fifty-seventh street, and that seven or eight passengers
got off,—some on the south side and others on the north.
On cross-examination he was asked:

Q. "Did it stop long enough for you to have gotten off
while it was standing still?

A. "It did; yes, sir.

Q. "You didn't give the conductor or anybody in charge
of the car any signal you wanted to get off at Fifty-seventh street, did you?

A. "No, sir.

Q. "So far as you know, they had no idea that you
wanted to get off at Fifty-seventh street, did they?

A. "No, sir.

Then his own counsel asked him:

Q. "Now, do you remember the length of time the car
stopped on the north crossing?

A. "Yes, sir.

Q. "About how long was it that it stopped there?"
(Objected to, and objection sustained, the court stating,
"I think we have been over that.")

There was no error in this ruling of the court. It was
not proper re-direct examination.

In determining whether there was error in instruct-
ing the jury to find for the defendant, the rule is that we
will look into the testimony only for the purpose of de-
termining whether there is any competent evidence in
the record fairly tending to prove the plaintiff's case as
made in his declaration. (*Offutt* v. *World's Columbian Ex-
position,* 175 Ill. 472; *Illinois Central Railroad Co.* v. *Harris,*
184 id. 57; *Chicago Edison Co.* v. *Moren,* 185 id. 571; *Land-
graf* v. *Kuh,* 188 id. 484.) On this branch of the case we
concur in the reasoning and conclusion of the opinion
of the Appellate Court as expressed in the opinion of
SHEPARD, J., as follows:

"There is no question but appellant was a passenger
of appellee at the time he was hurt. Was there, then,

under the declaration and evidence, any neglect by appellee of the high degree of care and skill which it was in duty bound to use to carry him safely?

"The declaration consisted of but one count, which charged, in effect, that appellee was a common carrier of passengers along and upon its tracks in Wentworth avenue, in Chicago, and that appellant was a passenger in a car running north thereon at or near Fifty-seventh street, at which street he desired to alight, and that it was the duty of appellant to give him reasonable opportunity to alight then and there. The declaration then proceeds, as set out in the abstract: 'Yet the said defendant, well knowing, or having reasonable and proper notice and opportunity to learn and know, that said plaintiff desired to leave said car at said Fifty-seventh street, and while said plaintiff, with ordinary care and speed, was about to step off said car at said crossing at said time, the said car being then not in motion, and the said defendant knowing, or having reasonable and proper notice and opportunity to learn and know, that plaintiff was about to step off said car on the west side of said car, there being no barrier and passengers being permitted by said defendant to get off and on said car from either side thereof, then and there negligently, carelessly and without proper regard for plaintiff's safety started said car, and while said plaintiff was standing upon the step or run-board along the west side of said car, and with due and proper care was trying to step up therefrom and to regain his seat in said car after said car had started as aforesaid, the said defendant negligently, carelessly and improperly caused said car to be given a sudden and violent jerk forward, and at the same time negligently, carelessly and improperly caused another of said street cars of said defendant to be run south along said avenue upon said defendant's adjacent west track at a high and dangerous rate of speed, and without a proper lookout being kept for the safety of said plaintiff

and others who were then and there passengers on said north-bound car, whereby and by means whereof said plaintiff lost his balance and hold upon the side of said north-bound car and was whirled off on to the said west track upon which said south-bound car was approaching, and before plaintiff could regain his balance and get off from said west track said south-bound car violently and with great force struck him and knocked him down in front of said last mentioned car, and shoved or dragged him along in front or partly underneath said car a long distance, to-wit, thirty feet, whereby said plaintiff was seriously and permanently hurt, wounded and injured, and the flesh of his right hand and arm torn and lacerated and the bones thereof crushed and broken, whereby, to save plaintiff's life from great danger, his said right arm had to be, and was, amputated and lost,' etc.

"As we understand the count, the negligence that is charged is, that appellee, having notice and opportunity to know that appellant desired to get off the north-bound car on which he was riding, at Fifty-seventh street, and was about to step off, the car being then not in motion, appellee started the car, and while appellant was standing upon the foot-board and was trying to step back therefrom and to regain his seat in the car after it had started, the car was improperly caused to move suddenly forward with a violent jerk, whereby he lost his hold and balance and was whirled off on to the west track at a moment when a south-bound train was approaching on said west track at a high and dangerous rate of speed, and before appellee could recover himself he was run upon by the south-bound car and was injured, etc.

"The evidence tended to show that the north-bound car stopped on both sides of Fifty-seventh street, and that passengers had alighted therefrom on both crossings, and that then it had started and begun to move forward. There was evidence that the car stopped a sufficient length of time for passengers to alight, and that

everybody who had given any indication of a desire to
do so had alighted in safety before the car started. Un-
doubtedly appellant wished and intended to leave the
car at one or the other of the street crossings, but there
was no evidence that he in any manner indicated such
desire or intention to any person in charge of the car.
The appellant himself testified, on cross-examination,
that he did not give the conductor or anybody in charge
of the car any signal that he wanted to get off, and that
so far as he knew 'they had no idea' that he wanted to
get off the car at Fifty-seventh street. Appellant's home
was at Fifty-third street, whither he was bound, about
half a mile beyond Fifty-seventh street. The reason
given by him for wishing to get off at Fifty-seventh street
was, because some fellow-passengers living contiguous
to Fifty-seventh street invited him and his wife to go
home with them. He was sitting with them toward the
rear of the car and his wife was seated in a seat two or
three rows in advance. As the car approached Fifty-
seventh street, and as the passengers with whom he in-
tended to go arose from their seats to alight, appellant
left his seat and stepped along on the footboard to where
his wife was sitting, to see if she would get off and go
along with him. She declined to accompany him, and he
handed her the keys to their home. At that time, when
he gave his wife the keys, his companions whom he in-
tended to visit had left the car at the south side of Fifty-
seventh street and were walking home. During the time
after he left his seat and while he was talking with his
wife the car had left the south crossing of Fifty-seventh
street and proceeded across the street to the north cross-
ing, where passengers alighted also, and had started up
again and was moving along at probably about half its
usual speed. It was then that, in his own language, he
'intended to step off.' It was just after appellant handed
the keys to his wife that he fell. There was evidence by
appellant's witnesses tending to show that he jumped,

but we have taken only his own testimony and such other testimony as was most favorable to him, as we are bound under the law to do, in considering the question that is primarily before us under the present record.

"We observe no evidence anywhere in the record that tends to support the charge of the declaration that after the car started up its motion was increased by a sudden and violent jerk. The inference is, on the other hand, quite strongly against such having been the case, from the fact that some of the witnesses were in doubt as to whether the car had even started from the crossing at all, although it is plain from appellant's own testimony, as well as from what was done in stopping the car and its position after appellant fell, that it had started and was moving when the accident occurred. We are wholly unable to discover, either in the proof or its inferences, any negligence whatever in the operation of the car from which appellant fell.

"The claimed error by the court in refusing to permit the appellant to answer his counsel's question as to the length of stop at the north crossing after he had positively testified that the stop was long enough for him to have gotten off, cannot be allowed. Other testimony showed that the stop was a very short one, though long enough for other passengers to get off.

"Coming now to the question as to whether there was negligence in the operation of the south-bound train, it is less plain. It is not clear wherein the negligence alleged by the declaration in that regard consists, but assuming that the negligence charged in that respect consists in running the south-bound train past the north-bound car at too high a rate of speed while the north-bound car was standing at the north crossing or had just departed therefrom, what was the evidence concerning it?

"Certain of the rules and regulations of the appellee governing the conduct of the operators of cars were introduced and read in evidence, as follows: 'When cross-

ing prominent streets or passing a car or train of cars which is stopped or running slow, drivers and grip-men will slacken speed and be sure that the car or train can be stopped immediately, if necessary, and conductors will keep a sharp lookout to help with hand-brakes, in case of disabled brake connection.' 'Avoid running into pedestrians and vehicles, especially at corners and cross-streets.'

"We think there can be no doubt, from the evidence, but that appellant was picked up, after the accident, north of Fifty-seventh street, but the exact distance north is uncertain. Some witnesses place the distance at about ten feet; another, at a car length or so, and others at varying distances,—from one to five feet. But perhaps the location of appellant at the time he was picked up does not aid very much in determining the rate of speed at which the south-bound car was moving, because he was carried along by the car, one or more witnesses testifying they saw him rolling along under the car, and it not being certain how far the car was north of Fifty-seventh street when he first fell. The direct evidence as to the direct rate of speed at which the south-bound car was traveling varied, also depending, probably, very much upon the point from which the witnesses viewed it. One witness, who observed it at about the middle of the block between Fifty-sixth and Fifty-seventh streets, testified it was then moving at a rapid rate of speed,—'about twenty-five miles an hour.' Another witness, who observed it at the same place, testified it was going at the usual speed,—'about sixteen or eighteen miles an hour.' Another witness, who was on the car that appellant fell from, testified that the south-bound car seemed to be running at the usual speed of 'about twelve miles an hour,'— presumably meaning at the time of the accident. We observe no other direct evidence of the rate of speed at which the south-bound car was traveling. The inference, however, is that it was moving rapidly, from the fact tes-

tified to by all that appellant was struck almost instantly after leaving his car, although the motorman had time to apply his brake and ring the gong after seeing appellant fall. Now, if the north-bound car had been standing at the time when it was being nearly approached by the south-bound car, we should feel bound to hold that the question as to whether the speed of the latter, as so shown by the evidence, was negligently rapid or not was one of fact that the jury should have passed upon; but the evidence showing, unmistakably, that the north-bound car had left the crossing while the south-bound car, going at the speed shown, was a considerable distance off and had gotten under way and attained half its usual speed before the cars came abreast of each other, we think the question of whether the rate of speed of the south-bound car was negligent or not ceased to be one of fact for the jury to decide. It being easily visible by the motorman of the south-bound car that the north-bound car had started from the crossing and was getting under way, he had the right to presume that all passengers intending to alight there had done so and that the road was clear for him to go ahead.

"The rules of the appellee cannot be reasonably construed to apply to approaching cars between street crossings, where it is manifest, by the exercise of reasonable observation, that the car that has been standing still at a crossing is resuming its travel and has already reached half its customary rate of speed before the trains meet. Nor can it be said that, as a matter of law, irrespective of appellee's rules, one car approaching another between street crossings must slacken speed because of the possibility that some passenger on one car or the other may fall from his car in front of the other, when there is no reason to anticipate such an occurrence. Of the vast number of cases cited by appellant, we have examined enough to satisfy us that none of them hold a doctrine opposed to what we have said.

"In our discussion of the case we have purposely eliminated the question of contributory negligence by the appellant, which the trial court had before it. The case as made by the appellant, giving to him the benefit of all inferences in his favor, does not tend to show negligence by the appellee in any aspect of the declaration, and therefore we need not stop to inquire whether appellant was in the exercise of due care for his own safety or not.

"It would have been the clear duty of the circuit court to have set aside a verdict for the appellant if one had been returned in his favor, and therefore, under the authorities referred to *supra*, the judgment appealed from will be affirmed."                *Judgment affirmed.*