## Chicago City Railway Company v. Alfred E. Jordan, administrator, etc.

### Gen. No. 11,563.

1. SPECIAL INTERROGATORIES—*when giving by court without submission to counsel, not prejudicial error.* Where it appears that the giving by the court of special interrogatories without submitting them to counsel, resulted in no prejudice to the complaining party, reversible error is not committed. (P., C., C. & St. L. Ry. Co. v. Smith, 207 Ill. 490, distinguished.)

2. CORONER'S INQUEST—*competency of evidence taken at.* The evidence of a witness taken at a coroner's inquest is competent by way of impeachment where he signed the same and admits such signing.

3. REMARKS OF TRIAL COURT—*effect of instruction telling jury to disregard.* Such an instruction will be considered upon appeal as tending to remove any error which may have been committed by ill-considered remarks.

4. NEGLIGENCE PER SE—*when claim of, waived.* An appellant cannot urge that particular conduct constituted negligence *per se* where upon the trial it caused the question as to whether such conduct constituted negligence to be submitted to the jury as one of fact.

Chicago City Ry. Co. v. Jordan.

5. NEGLIGENCE PER SE—*what does not constitute.* It is not negligence *per se* for one to pass behind a car and to step upon an adjoining track without first looking to see if a car is approaching upon such second track.

6. INSTRUCTIONS—*how to be considered.* Instructions are to be read as a series. They supplement each other, and the omissions of one may be cured by the contents of another.

7. WANTONNESS—*when evidence sufficiently sustains charge of.* Evidence which tends to show that a street car was being run at a dangerous rate of speed in a populous part of a city, without ringing the gong, up to and over a cross-walk, at a street intersection, at a time when a car going in the opposite direction stood upon or had just left that cross-walk, will sustain a charge of wantonness. (So held by the judge delivering the opinion of the court.)

8. WANTONNESS—*when evidence of, not essential to recovery.* It is not essential that the jury should find wilful and wanton negligence upon the part of the servants of a traction company where they find negligence merely upon the part of such servants and an exercise by the plaintiff's intestate, who was a child, of ordinary care, judged by the standard applying to adults.

Action on the case for death caused by alleged wrongful act. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed October 31, 1904.

WILLIAM J. HYNES, JAMES W. DUNCAN and C. LE ROY BROWN, for appellant; MASON B. STARRING, of counsel.

EDGAR L. MASTERS and IRA J. GEER, for appellee; DARROW & MASTERS, of counsel.

MR. JUSTICE BALL delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee for damages arising from the death of a five year old child. The accident happened about 1 : 30 P. M. of March 11, 1902, at the intersection of Halsted street, which runs north and south, and Garfield boulevard, which runs east and west, in the city of Chicago. The child was struck by or ran into a car owned and operated by appellant, and died the next day from the effects of his injury.

Garfield boulevard is 200 feet in width. Three driveways, with intervening grass plats and stone cross-walks at the north and south sides constitute the boulevard where

it intersects Halsted street. The accident happened on or near the north cross-walk, which is four feet and eight inches in width, its south edge being eight feet north of the north line of the boulevard, if that line were continued across the street. Halsted street where it crosses the boulevard is fifty feet in width. In the center of this space appellant owned and operated by electricity a double track street railway. The child was born and had always lived on the boulevard four blocks east of Halsted street. His father was an architectural draughtsman, apparently in comfortable circumstances. He knew that this crossing was much frequented, and that Halsted street was a thronged highway. On the day in question the father sent the child upon an errand to a shop on the boulevard situate west of Halsted street. He knew the child would have to cross and recross Halsted street. On his way this little boy picked up a younger companion. The two children crossed Halsted street, went to the shop, and then back to the north cross-walk. When they reached the walk they found one of the cars of appellant headed south, standing on the walk. The south-bound cars ran on the west track and the north-bound cars on the east track. While the boys stood waiting, a north-bound car approached from the south. As soon as the south-bound car started on its way the boys walked or ran behind it, and the deceased, being somewhat in advance of his companion, was struck by the north-bound car, or ran into the step or side of the north-bound car, and was thrown down and drawn into or under the wheels of the car and thereby mortally injured.

The court of its own motion, and without notice to either party, submitted to the jury the following special interrogatories:

"1st. Were the defendant's servants guilty of wantonness or recklessness in driving and managing the car in question?

"2nd. Were the parents of the deceased, Arthur A. Jordan, or either of them, guilty of a want of ordinary care proximately contributing to the accident in question?

" 3rd.   Did the deceased child run into the side of the car in question?

"4th.   Did the said car run into and strike the deceased child?

" 5th.   Was the defendant guilty of the negligence charged against it in the declaration herein, or some count thereof?"

To this action of the court áppellant duly excepted.   It is claimed that in this regard the court committed reversible error.   It is true, in P., C., C. & St. L. Ry. Co. v. Smith, 207 Ill. 490, it is decided that it was error for the trial court upon its own motion to give a special interrogatory to the jury without first submitting it to counsel for the parties; but the Supreme Court found that two material issues, whether the plaintiff was exercising due care, and whether the defendant was negligent, were involved and sharply controverted in the case; that by submitting but one of these questions to the jury, the trial court intimated that in the mind of the court such question was the one doubtful or controverted question in the case; and that if such interrogatory had been submitted to counsel for the defendant, they might not have been willing to have an answer upon one question without an answer upon the other.   We do not understand the opinion to be based upon the statute prescribing the manner in which special interrogatories shall be submitted when they are presented by counsel, but upon the fact that, under the circumstances of the Smith case, the failure to submit the interrogatory to counsel was prejudicial error, since the court says, " There might be cases where the submission of questions by the court without notice would not be ground for reversal, where it could be seen that there was no injurious effect."   Here the question of the negligence, if any, of the servants of appellant, and the question of the want of care, if any, of the parents of the deceased, and of whether the child ran into the side of the car, or whether the car ran into and struck the child, were submitted to the jury in separate special interrogatories.   These are the material and controverted questions in this case.   As each and all of them were submitted to

the jury, it is clear that their submission without first showing them to counsel did not prejudice either party. It follows that the action of the trial court in this regard does not constitute reversible error.

During the cross-examination of the motorman of the north-bound car, his evidence taken at the coroner's inquest was shown him, and he admitted that the signature thereto was his. It was then offered in evidence, and objected to by appellant upon the ground that it had not been shown he knew anything about its contents. The court replied: "That makes no difference." When the attention of the court was called to the fact that the witness had acknowledged the signature to the deposition to be his, the court said: "Oh yes. That is sufficient. Go on and read it." Counsel for appellant excepted, and was proceeding to state the ground of his objection more fully, when the court interrupted with these words: "I don't care to hear any further grounds. The court heard counsel make his objections and then ruled. We cannot take up these things in such piecemeal way. Go on." Counsel excepted. It is now urged that these rulings and remarks constitute reversible error. We do not think so. When the witness admitted that he signed his evidence given at the inquest, that paper, so far as its identification was concerned, was admissible in evidence. The remarks of the court were directed to that point, and not to the effect which that evidence might have upon the testimony of the motorman at the trial. In addition the court in its instructions told the jury that by any words uttered or remarks made by him during the trial he did not mean to express any opinion upon any question of fact in the case. The jury was not misled by the rulings or by the remarks of the court in this regard.

It is contended that the father of the deceased was clearly guilty of contributory negligence in unnecessarily sending this child into a place of known danger. This is also a question of fact primarily for the jury. Appellant asked the court to instruct the jury that if they believed from the evidence appellee failed to exercise ordinary care

in sending this child on the street in question and across street railroad tracks, they must find appellant not guilty. The court also instructed the jury that if they believed from the evidence that either of the parents of said child was guilty of a failure to exercise ordinary care in looking out for the safety of the child, and such negligence proximately contributed to the accident, the jury must find appellant not guilty. Having thus submitted these questions of fact to the consideration of the jury, appellant cannot now and here urge that such facts or either of them were or was negligence *per se*, or negligence as matter of law. Chicago T. Ry. Co. v. Schmelling, 197 Ill. 625.

It is contended that instruction No. 1, given at the request of appellee, concerning the measure of damages, is erroneous because it omits the essential element of care upon the part of the parents of the child. This objection is answered by the instruction telling the jury "that if they should find from the evidence and under the instructions of the court," etc., and by other instructions (Nos. 15 and 17) stating the rule of parents' contributory negligence. The law applicable to different questions may be stated in separate instructions. And the common law applicable to all the questions in the case need not be stated in each. In such case instructions supplement each other, and if they present the law fairly when reviewed as a series, it will be sufficient." Pardridge v. Cutler, 168 Ill. 504, 512.

It is objected that given instruction No. 7, in which the facts in issue are stated to the jury, fails to tell them that the instructions of the court are to be considered by them in determining the issues of fact. The jury could not have been misled by this omission, since they were told in varying language in given instructions Nos. 2, 5, 6, 13 and 31½, that in considering the case they were to be governed by the instructions of the court. Pardridge v. Cutler, *supra;* see, also, W. Chicago St. Ry. Co. v. Lieserowitz, 197 Ill. 607; Ill. Cent. Ry. Co. v. Jernigan, 198 Ill. 297; Chicago City Ry. Co. v. Roach, 180 Ill. 174; S. Chicago C. Ry. Co. v. McDonald, 196 Ill. 203.

The rights and duties of the deceased and of appellant at and upon this crossing were equal. It is not negligence *per se* for one to pass behind a car and to step upon an adjoining track without first looking to see whether a car is approaching upon such second track. The question of negligence and want of ordinary care, in such case, is a question of fact for the jury in the light of the circumstances and under the instructions of the court. Chicago C. Ry. Co. v. Robinson, 127 Ill. 9.

The jury by its answer to special interrogatory No. 1 expressly found that neither of the parents of the child was guilty of a want of ordinary care proximately contributing to the accident, and by its verdict necessarily found that the child, in passing behind or around the rear of the south-bound car and proceeding east until it was struck by or it ran into the north-bound car, was not guilty of a want of ordinary care. With the latter fact found against appellant, the question of the negligence of the parents became immaterial. C. C. Ry. Co. v. Robinson, *supra;* True v. Woda, 104 Ill. App. 17; Schierhold v. Ry. Co., 40 Cal. 447.

The question then arises, does the evidence tend to prove wilfulness or wantonness upon the part of the motorman in charge of the north-bound car?

The court, at the request of appellee, instructed the jury that "a wilful or wanton act may be done with intent, or it may be done with such a gross want of care and regard for the rights of others as to justify the presumption of wilfulness or wantonness, or with such gross negligence as to imply a disregard of consequences, or a willingness to inflict injury."

The court also added to clause 3 of instruction No. 14 offered by appellant, setting forth the propositions of fact to be proved by appellee in order to warrant a recovery, which clause reads "that the Jordan child's parents exercised ordinary care for the safety of said child," the following words : "But such ordinary care need not be shown if the jury find from the evidence that the defendant's servants were guilty of wantonness or recklessness in driv

ing or managing the car in question, as explained in the other instructions, to which the jury are referred."

To instruction 15, stating the care required to be exercised by the parents of a child of tender years, and also to instruction 17, stating that the negligence of the parents of a child of tender years is to be imputed to the child, the court added the following words: " If the jury further find from the evidence against the charge of wantonness or recklessness on the part of the defendant's servants in driving or managing the car in question."

The court also instructed the jury to the effect that if the death of the child was caused by the wilful, wanton or reckless conduct of the defendant's servants, then the negligence, if any, of its parents, would not preclude a recovery.

The evidence shows that the children were hidden from the view of the motorman of the north-bound car by the south-bound car; and that the coming of the north-bound car was concealed from them by the same car.

The evidence which sustains this charge of wilfulness or wantonness, if it is sustained, consists in running the north-bound car at a dangerous rate of speed in a populous part of the city without ringing a gong, up to and over a cross-walk at a street intersection at a time when a car going in the opposite direction stood upon or had just left that cross-walk.

There is evidence in the record tending to show that under all the circumstances of the case, the north-bound car in approaching the cross-walk was running at a high and dangerous rate of speed. This crossing was a much frequented place. The right of appellant to run its cars over it was equal to and not superior to the right of pedestrians to use it for the purpose of crossing over the street car tracks. The south-bound car stood at this crossing discharging and receiving passengers until the north-bound car came near to the crossing. The motorman of the north-bound car knew from his experience that passengers alighting from the south-bound car or pedestrians halted by the presence of that car on the crossing, desiring to

go east, might start across the tracks as soon as the stand-
ing car was put in motion, and that the approach of his car
would be hidden from such persons by the standing car.
Whether a given rate of speed be dangerous or safe depends
upon the circumstances. A justifiable speed between street
crossings, where the street is but little used by pedestrians,
may become criminal on a much-used highway and at or in
the immediate vicinity of a street crossing which is in con-
stant use by the public.

Mrs. Reddy, called by appellee, says: "Well, I know it
(the north-bound car) was going fast." She also says that
when the front of that car came within about eight feet of
the north cross-walk the motorman began to put on the
brake.

Mrs. Tennes testified: "I should say they were going
at the rate of ten miles per hour."

Joseph Aumert says that the north-bound car approached
the cross-walk, "I should think about six or seven miles an
hour; at that rate of speed."

Two witnesses swear that no bell was rung on the
north-bound car as it approached the crossing. The wit-
nesses Burgess, Meehan and Lovewell have no recollection
upon the subject. Cricks says the bell on the north-bound
car was "rung the whole way over the boulevard, off and
on." Carroll, in charge of the south-bound car, says he
heard the bell rung on the north-bound car, but where that
car was when the bell rang he does not state. Langohr,
the motorman on the north-bound car, testified that in the
100 feet south of the cross-walk he struck the gong "two or
three times, and struck it some time after that again, at
intervals; struck it at intervals." And yet in his evidence
before the coroner at the inquest held over the body of the
child, he says: "I had rung my bell meeting the south-
bound car; that is the last time I rang the bell."

The evidence tends to prove that this car ran from eight
to twenty-five feet after it struck the boy before it stopped.
All of these questions, the speed of the car as it approached
this north crossing, the distance that car ran after the acci-

Chicago City Ry. Co. v. Jordan.

dent, and the ringing or the not ringing of the bell or gong, were in the first instance for the consideration and determination of the jury. Upon these points the evidence is conflicting. The jury found each of them against appellant. That finding has such sufficient support in the evidence that we cannot say it is against the clear weight of the testimony.

This finding distinguishes the case at bar from that of Ackerstadt v. C. C. Ry. Co., 194 Ill. 616, where the evidence showed that the car which had been standing at the crossing was well under way and had attained one-half speed before the plaintiff alighted therefrom in front of a car coming upon the opposite track.

It was not necessary for the jury to find wilful and wanton negligence upon the part of the servants of appellant to sustain the judgment; a finding of negligence only is sufficient, if they further found that what the child did, judged by the standard applied to an adult, was not negligence. C. C. Ry. Co. v. Robinson, 127 Ill. 9; True v. Woda, 104 Ill. App. 17, affirmed, 201 Ill. 315.

The fifth count of the declaration charges that " the said servants of the defendant then and there recklessly, wilfully and wantonly drove and propelled said car to and upon the deceased," etc. Under this allegation, and under the evidence herein referred to, the writer, but not the majority of the court, is of the opinion that the jury was justified in finding that appellant, through its servants, was guilty of wantonness and recklessness in managing the north-bound car. I. C. Ry. Co. v. Leiner, 202 Ill. 624, and cases cited.

We have examined the further contentions of appellant and find in them no substantial error.

The judgment of the Superior Court is affirmed.

*Affirmed.*